Affirmed and Opinion filed September 23, 2010.

 

In The

 

Fourteenth Court of
Appeals

___________________

 

NO. 14-08-01039-CV

___________________

 

Cressman Tubular Products Corporation,
Appellant/Cross-Appellee

 

V.

 

Kurt Wiseman Oil & Gas, Ltd. and Escondido
Petroleum, Appellees/Cross-Appellants

 

V.

 

SEPCO TUBULAR,
INC. AND UNITED CASING, INC., Cross-Appellees



 



 

On
Appeal from the 129th District Court

Harris County,
Texas



Trial Court Cause No. 2005-61801

 



 

 

OPINION

       This is a double appeal of a case in which multiple theories of liability
were asserted against four defendants for damages caused by the sale of goods
for use in an oil well.  After the defendant found liable for 99% of the
plaintiffs’ damages filed for bankruptcy protection, the trial court severed
those claims from this case and entered judgment requiring all of the
plaintiffs’ damages and attorney’s fees to be paid by the defendant that the
jury found to be 1% responsible.  On appeal, that defendant contends that all
of the plaintiffs’ damages sound in tort, and thus, the trial court erred in
disregarding a jury finding allocating responsibility for breach of an express
warranty and in awarding attorney’s fees to the plaintiffs.  The plaintiffs argue
that all of their damages sound in contract, and they contend that the trial
court erred in failing to disregard the jury’s finding allocating
responsibility for breach of implied warranties, failing to hold the defendants
jointly and severally liable, and failing to include the jury’s breach-of-contract
finding as an alternative basis for the judgment against one of the defendants. 
We conclude that the plaintiffs’ express-warranty claim against appellant
sounds in contract, but their implied-warranty claims against the
cross-appellees sound in tort; thus, the trial court did not err in disregarding
the proportionate-responsibility finding as to the express warranty claim
against one defendant and in refusing to disregard a similar finding as to the
implied warranty claims against two other defendants.  Finally, we further
conclude that the trial court did not err in refusing to include alternative
bases for its judgment, and we affirm the trial court’s judgment.   

I.  Factual and Procedural Background

            Kurt
Wiseman is the owner of Kurt Wiseman Oil & Gas, Ltd., which owns a working
interest in the Gerdes No. 1 well in Lavaca County, Texas.  He also is the
president of Escondido Petroleum, which is the well operator.  We refer to all
three collectively as “Wiseman.”  

            The
Gerdes No. 1 well had been shut in for some time and the existing casing was
damaged, but Wiseman planned to perform a fracture stimulation to return the
well to production.  In this procedure, the rock surrounding the oil reservoir is
fractured by fluid mixed with increasing concentrations of proppant pumped at
high pressure into the well down a tubing string, which consists of joints of
pipe connected to one another by couplings.  The proppant holds the fracture
open to allow oil and gas to drain into the well bore.  The proppant and fluids
are then removed and oil can be produced through the same tubing string.  

            Wiseman
ordered the tubing string from Cressman Tubular Products Corporation and specified
that the components were to be API P110, which means that they were to meet a
particular toughness standard set by the American Petroleum Institute. 
Cressman ordered the tubing string from Sepco Tublar, Inc.; Sepco ordered the
couplings from United Casing, Inc.; and United Casing bought the couplings from
the manufacturer, Colaco Tubular Services, Inc.  When delivered by Colaco, the
couplings had been painted white, which in industry custom signified that they
met the API P110 standard.  United Casing sent the couplings to Sepco, and Sepco
attached the couplings to the joints of pipe before shipping them to Cressman,
who then shipped them Wiseman.  

A.        The
Tubing String Failures

            The
joints of pipe were assembled into a tubing string and used in the planned fracture
stimulation in January 2004.  Because the casing in the well narrowed from 7
5/8 inches to 5 inches in diameter, wider pipe joints were used in the upper
part of the tubing string and narrower pipe was used in the lower part.  

            After
about sixty percent of the fluid and twenty percent of the proppant had been
pumped down the well, the tubing string failed and there was a sudden dramatic loss
of pressure.  The fracture stimulation could not be completed, and mud entered
the formation so that a mixture of fracture fluid, proppant, and mud were mixed
with the condensate that flowed from the well.  As Kurt Wiseman later
testified, “The mud went into the fracture, made it to the point where the well
was actually showing skin damage, which is damage near the well bore, not
allowing it to flow.  So, yes, the mud was obviously damaging [the formation].” 
Wiseman’s expert Richard Klem explained at trial that the “skin damage”
from the mud or “positive skin” meant that the perforations in the well casing
were blocked.  

            Wiseman
hired consultants who were unable to find a physical obstruction to the tubing
string, and eventually, a well service company was able to circulate the mud in
the well[1] and remove part of the string, which was found to
have lost a coupling from its upper, wider part.  The coupling could not be
found, and as Kurt Wiseman later testified, he was concerned that it might have
fallen to the area where the casing and tubing string narrowed such that removing
the entire tubing string could allow the coupling to fall deeper into the well
bore and “junk” the well,[2] potentially rendering it unusable.  Wiseman decided
to leave the narrower part of the tubing string in place, and reattached the wider
portion of the string to it using an “overshot packoff.”[3]  Fluids and mud were washed out from the well in
sufficient quantities for the well to begin producing oil.  

            Production
stopped in May 2004 when Wiseman again found mud inside the tubing string. 
When a crew attempted to remove it, the tubing string parted and two couplings
were found to have split from the wider portion of the string.  Wiseman was
able to quickly obtain only a dozen couplings, and as explained at trial, Wiseman
would lose its lease if production was interrupted for more than thirty or
sixty days.  Wiseman therefore replaced the split couplings and those adjacent
to them, and the well was returned to production.  The split couplings and
those that had been replaced were tested, and it was found that the split
couplings did not meet API P110 standards.  

            In
January 2005, the well again stopped producing, and once more Wiseman found
that a coupling had failed and mud had entered the tubing string.  This time, he
was able to obtain enough couplings to replace all of the approximately 300
couplings from the wider portion of the tubing string to the overshot packoff. 
In 2006, the well was no longer producing enough gas to lift the oil
condensate, and Wiseman began using a gas lift to raise the oil from the well. 
Wiseman’s lease was secured by a second producing well on the same property in
2007, and he was able to interrupt production on the Gerdes No. 1 well to remove
the overshot packing, replace the entire tubing string, and perform a second fracture
stimulation without jeopardizing the lease of the property.  After the second
fracture stimulation, the well produced enough gas to allow Wiseman to
discontinue the use of the gas lift. 

B.        The
Trial

            Wiseman
sued Cressman and Sepco in September 2005, and added United Casing and Colaco as
defendants in 2006.  Against each of the defendants, Wiseman asserted claims for
manufacturing defects, negligence, gross negligence, violations of the
Deceptive Trade Practices-Consumer Protection Act (“DTPA”), and breaches of
contract, express warranties, and the implied warranties of merchantability and
fitness for a particular purpose.  Cressman, Sepco, and United Casing asserted cross-claims
for contribution and indemnity from Colaco.[4]
 Wiseman introduced evidence that if the couplings had not failed, the fracture
stimulation would have been completed when it was initially attempted in 2004,
and it would not have been necessary to incur expenses for removing the tubing
string, clearing mud from the well bore, transporting mud from the site, repairing
various pieces of production equipment, washing transport trucks, watching the
well, testing the well bore and the couplings, replacing damaged or missing
couplings, using a gas lift, and performing a second fracture stimulation.  

            The
trial court submitted jury questions on Wiseman’s
express warranty, implied warranty, DTPA, and products liability theories of
liability against each defendant, and submitted questions concerning Wiseman’s
breach-of-contract claim against Cressman.

            As
relevant to this appeal, the jury was asked whether any defendant made an
express warranty to Wiseman that became the basis of the bargain; the jury answered
in the affirmative only as to Cressman and Colaco.  The jury also was asked if
any defendant breached the implied warranty of merchantability.  The jury
answered “yes” as to each defendant and allocated responsibility for damages
resulting from the breach of implied warranty as follows:  99 percent to Colaco,
1% to Cressman, and 0% to United Casing and Sepco.  The jury found that Wiseman
sustained damages of $548,187 for breach of this implied warranty.

            In
addition to separate questions addressing express and implied warranties, the
trial court also submitted another question that combined both theories.  In
the combined question, the jury was asked to indicate with a single “yes” or
“no” answer whether any defendant failed to comply with an express warranty; an
implied warranty of merchantability; or an implied warranty of fitness for a
particular purpose.  The jury answered in the affirmative as to each defendant;
found that Wiseman sustained damages in the amount of $548,187; and again allocated
99% of the responsibility for such damages to Colaco and 1% to Cressman.

            Regarding
Wiseman’s breach-of-contract claim against Cressman, the jury found that
Cressman failed to comply with the terms of its agreement, causing Wiseman
$5,481 in damages.

            Finally,
the jury found that a reasonable attorney’s fee for
preparation and trial of Wiseman’s DTPA and contract claims was $219,274.[5]  

C.        Post-Verdict
Motions and Judgment

            After the jury rendered its verdict and was discharged,
Colaco filed for bankruptcy and the claims against it were severed from the
case.  Wiseman moved the trial court to disregard the jury’s
proportionate-responsibility finding associated with the question that combined
liability for breach of express and implied warranties.  Wiseman also asked the
trial court to disregard the jury’s proportionate-responsibility finding
associated with the question in which the jury was asked to determine liability
for breach of the implied warranty of merchantability alone.  In addition,
Wiseman argued that the jury failed to answer the question concerning damages
for Cressman’s breach of contract “consistently with its other damages
findings” and asked the trial court to disregard that finding and enter
judgment against Cressman for $548,187 for breach of contract, together with
attorney’s fees, interest, and costs.  The trial court granted the motion only in
disregarding the proportionate-responsibility finding associated with Wiseman’s
combined express and implied warranty theories, and ultimately rendered judgment
holding Cressman solely liable for $548,187 in actual damages and $219,274 in
attorney’s fees.  Wiseman’s motion to modify the judgment was overruled by
operation of law, and this appeal ensued.

II.  Issues Presented

            Cressman
argues that Wiseman’s damages sound in tort, and thus, the trial court erred in
disregarding the jury’s finding allocating responsibility for breach of an
express warranty.  Cressman further asks that if we sustain its first issue, we
reverse the award of attorney’s fees.  

            Wiseman
brings a cross-appeal against Cressman, Sepco, and United Casing, challenging
the trial court’s failure to disregard the jury’s finding allocating
responsibility for breach of implied warranties and hold these defendants
jointly and severally liable.  In a second cross-issue, Wiseman argues that the
trial court further erred by failing to increase the damages that the jury
found were caused by Cressman’s breach of contract and enter judgment on the alternative
basis of breach of contract. 

III.  Standard of Review

            A trial court may disregard a jury finding only if it
is unsupported by evidence or if the issue is immaterial.  Spencer v. Eagle
Star Ins. Co. of Am., 876 S.W.2d 154, 157 (Tex. 1994).  A question is
immaterial when it should not have been submitted or calls for a finding beyond
the province of the jury, such as a question of law.  Se. Pipe Line Co. v.
Tichacek, 997 S.W.2d 166, 172 (Tex. 1999).  A properly-submitted question
can be rendered immaterial by other findings.  Id.  

IV.  Analysis

            The
parties do not dispute that the coupling failures caused Wiseman damages of
$548,187 or that $219,274 is a reasonable fee for the necessary services of the
plaintiffs’ attorneys.  They all assert that tort claims are subject to
proportionate responsibility and claims sounding in contract are not.  See
Tex. Civ. Prac. &
Rem. Code Ann. § 33.002(a)(1) (Vernon
2008) (providing that proportionate responsibility applies to “any cause of
action based on tort in which a defendant, settling person, or responsible
third party is found responsible for a percentage of the harm for which relief
is sought”).  The parties differ in the importance they attach to the particular
theory of liability asserted and to the character of the damages.  

            Cressman
contends that courts determine whether an express-warranty claim sounds in tort
or contract by examining the nature of the damages, and argues that the damages
found by the jury to have been caused by Cressman’s breach of an express
warranty sound in tort because the coupling failures damaged property other
than the tubing string.  Wiseman responds that claims for breach of express
warranty sound in contract as a matter of law, and in any event, the damages at
issue were contractual because Wiseman did not seek to recover for damage to
the formation.  

            Regarding
Wiseman’s cross-appeal, the parties agree that breach of an implied warranty
can sound in tort or contract, depending on the nature of the damages.  Wiseman
contends that the damages found by the jury for the defendants’ breaches of
implied warranties sound in contract because Wiseman sought damages only for
economic loss, and thus, the damages awarded for this claim are not subject to
the proportionate-responsibility statute.  United Casing and Sepco assert that
Wiseman sought and was awarded compensation for damage to property other than
the tubing string that was the subject of Wiseman’s contract with Cressman, and
thus, the claim sounds in tort and the proportionate-responsibility statute
applies.

A.        Cressman’s
Breach of an Express Warranty

            The
trial court partially granted Wiseman’s motion to disregard the jury’s
proportionate-responsibility findings, and Cressman challenges that ruling on
both procedural and substantive grounds.  As a threshold matter, we address
Cressman’s contention that Wiseman waived any right to the relief it requested,
or that it was otherwise estopped from challenging the application of the
proportionate-responsibility statute.

            Cressman points out that the jury was
instructed to allocate responsibility for Wiseman’s damages if it found that
more than one defendant breached a warranty.  According to Cressman, it relied
to its detriment on Wiseman’s failure to object to this portion of the jury
charge, and thus, we should hold that Wiseman waived any challenge to the
application of the proportionate-responsibility statute or is estopped from
raising such a challenge.  We disagree.  Whether
the proportionate-responsibility statute applies is a question of law.  Reveille
Trucking, Inc. v. Loera Customs Brokerage, Inc., No. 13-08-00127-CV, 2010
WL 2638494, at *3 (Tex. App.—Corpus Christi June 29, 2010, no pet. h.) (mem.
op.)  As a purely legal question, it is analogous to a legal sufficiency challenge
that can be raised post-verdict.  Cf. Holland v. Wal-Mart
Stores, Inc., 1 S.W.3d 91, 94 (Tex. 1999) (per curiam) (holding that the
availability of attorney’s fees is a purely legal question, and thus, may be
challenged post-verdict, even by the party that proposed submitting the matter
to the jury).  Cressman also asserts that Wiseman
waived error in that, before the jury was discharged, Wiseman failed to
complain that the jury returned an inconsistent verdict in allocating
responsibility for the damages caused by the breach of warranty.  Because
Cressman has not identified the finding that allegedly conflicts with this
answer, this argument is waived.  Tex.
R. App. P. 38.1(i).

            Turning
to the substantive arguments, Cressman contends that breach of an express
warranty sounds in tort when the breach causes damage to or loss of use of
property other than the property that is the subject of the contract.  The
Texas Supreme Court, however, recently held that express-warranty claims sound in
contract.  Med. City Dallas, Ltd. v. Carlisle Corp., 251 S.W.3d 55, 57
(Tex. 2008).  In reaching this result, the court in Carlisle did not
base its holding on the type of the damages sought or sustained.  See id. at
61 (“[T]he damages recoverable here support our conclusion that the
claim is based in contract. . . .  Medical City’s damages were
economic injuries based on the defective roof, further demonstrating
that its recovery is contract-based.”) (emphasis added).  To the contrary, the
court spoke in broad terms in holding that “a claim based on an express warranty is, in essence, a
contract action.”  Id. at 58.  

            We conclude that the trial court did not err in granting Wiseman’s
request to disregard the jury’s proportionate-responsibility finding in
connection with Cressman’s breach of an express warranty.  We therefore
overrule Cressman’s first issue and do not reach its second issue.

B.        Sepco
and United Casing’s Breach of Implied Warranties

            On
appeal, Wiseman has not challenged the trial court’s failure to render judgment
against Sepco and United Casing based on any theory other than breach of an
implied warranty.  Moreover, Wiseman has never argued that the jury’s finding
that Sepco and United Casing caused damage to Wiseman by breaching implied
warranties is inconsistent with the finding allocating 0% of the responsibility
for such damages to these defendants.  Wiseman instead
argues that the trial court erred in failing to disregard the jury’s
proportionate-responsibility finding that Sepco and United Casing are not
responsible for any part of Wiseman’s damages arising from their breaches of
implied warranties. 

            Generally, breach
of an implied warranty under article 2 of the Texas Uniform Commercial Code is a tort claim.  See JCW Elecs., Inc. v. Garza, 257
S.W.3d 701, 704–05 (Tex. 2008).  In JCW Electronics, the court noted
that as originally enacted, Chapter 33 of the Texas Civil Practices and
Remedies Code expressly was applicable to actions “to recover damages for
personal injury, property damages, or death in which at least one defendant is
found liable on a basis of . . . breach
of warranty under chapter 2, Business & Commerce Code.”  Id. at 704
(quoting Act of June 3, 1987, 70th Leg., 1st C.S., ch. 2, § 2.04, 1987
Tex. Gen. Laws 37, 41).  The court further explained that although
Chapter 33 was subsequently amended,[6] “there is no indication that the Legislature intended to
restrict the scope of Chapter 33 by explicitly removing implied warranties.”  Id.
 Wiseman contends that JCW Electronics is inapplicable because that
case concerned personal injury and death rather than property damage.  But in JCW
Electronics, as in Medical City Dallas v. Carlisle, the court did
not narrowly limit its holding to the facts of the case, but stated its
reasoning in a manner that applies equally here.  Specifically, the court based
its holding in JCW Electronics on the legislature’s intent that Chapter
33 be applied to claims for “personal injury,
property damages, or death” under chapter 2 of the Texas Uniform Commercial
Code.  Here, the implied-warranty claims were submitted to the jury in language
tracking section 2.314(b) of the Business and Commerce Code.

            Wiseman does
not dispute that the implied-warranty claims are claims for breach of warranty
under chapter 2 of the Business and Commerce Code; however, Wiseman points out
that the court recognized an exception in that, “when the damages are purely
economic, the claim sounds in contract.”  Id. at 705.  But Wiseman’s
position at trial was that the damages at issue were not purely economic
because the tubing string also damaged property when it failed.  For example, Kurt
Wiseman testified that the formation and the well bore were damaged as follows: 


Q.        When
this fails, the frac job goes awry, what does that do to the formation when the
frac gets messed up?

A.        Well,
you -- now you have got mud, which is extremely damaging, exposed to formation
as well.  You got gas and mud and frac proppant trying to come up the back
side, as well as up the tubing.  You got a severe problem.

Q.        Did
this failed frac result in the fluids to go the wrong place, cause damage to
the formation, in terms of its -- your ability to get oil and gas out of there?

A.        Yes. 
Having mud across the formation is damaging. . . .  The mud went into the
fracture, made it to the point where the well was actually showing skin damage,
which is damage near the well bore, not allowing it to flow.  So, yes, the mud
was obviously damaging.

Q.        Could
you repair the damage?

A.        Only
way to attempt to repair that damage would be to re[-]frac the well.

Wiseman’s expert Richard
Klem similarly testified that the tubing string failures resulted in “skin
damage” or “positive skin,” meaning that the perforations that had been made in
the casing to perform the fracture stimulation became blocked.  In addition,
the evidence Wiseman submitted in support of its damages claim include itemized
invoices for the costs to repair various items of production equipment and to remove
mud from equipment, tanks, and transport trucks.  And finally, Wiseman’s
attorney testified, 

The measure of damages when you are provided defective
materials that ruin your well is three things: A, the cost to repair the well,
if that can be done.  If it cannot be repaired—what we’re seeking for there is
the lesser of the three.  The cost to repair the well, and if you can’t repair
the well you are entitled to recover the cost to replace the well.  

This is the correct measure
of damage to the reservoir or the well bore.  See Dresser Indus., Inc. v.
Page Petroleum, Inc., 853 S.W.2d 505, 511–12 (Tex. 1993); Atex Pipe
& Supply, Inc. v. Sesco Prod. Co., 736 S.W.2d 914, 917 (Tex. App.—Tyler
1987, writ denied).  But these costs are subject to apportionment.  See Dresser,
853 S.W.2d at 511–12 (apportioning damages in accordance with the percentage of
responsibility found by the jury).  Damage to the well formation is damage to
an interest in real property.  Atex, 736 S.W.2d at 917.  And damage to
the well bore is damage to a real estate improvement.  Wagner & Brown,
Ltd. v. Sheppard, 282 S.W.3d 419, 426 (Tex. 2008).  Both are “property damage”;
thus, the exception applicable to implied-warranty claims that result solely in
economic damages does not apply here.  See Bay Rock Operating
Co. v. St. Paul Surplus Lines Ins. Co., 298 S.W.3d 216, 230 (Tex. App.—San
Antonio 2009, pet. denied) (holding that damage claim for the costs to repair a
well is a claim for property damage, not economic loss); see also Equistar Chems., L.P. v. Dresser-Rand Co., 240 S.W.3d 864, 868 (Tex. 2007) (treating
a factual finding of the costs “to restore” a plant as tort damages where the
plaintiff failed to object that the jury question allowed the jury to find both
tort damages and economic losses in a single answer); Parkway Co. v.
Woodruff, 901 S.W.2d 434, 441 (Tex. 1995) (explaining that property damage
can be measured by diminution in value or cost of repair).  

            We conclude
that the Wiseman’s implied-warranty claims against Sepco and United Casing
sound in tort, and thus, the trial court did not err in applying the jury’s proportionate-responsibility
finding to the damages associated with these claims.  We therefore overrule
Wiseman’s first cross-issue.

 

C.        Alternative
Bases for Recovery

            Wiseman
contends in his second issue that the trial court erred in failing to award
judgment against Cressman on the alternative basis of breach of contract.  The
jury found that Cressman’s failure to comply with its contract caused Wiseman
damages of only $5,481, but Wiseman contends that the evidence is factually
insufficient to support this finding.  He argues that he presented a single
model for damages and in response to every other damage question, the jury
found that Wiseman had sustained damages of $548,187.  He therefore argues that
the jury’s finding of contract damages in the amount of $5,481 is inconsistent
with the jury’s other damage findings, and maintains that the trial court
should have substituted the higher damages found by the jury in connection with
Wiseman’s warranty and DTPA claims for the lower contract damages.  

            These
arguments are without merit.  A complaint that the jury’s findings are
inconsistent is waived if it is not raised before the jury is discharged.  Kennedy
Ship & Repair, L.P. v. Pham, 210 S.W.3d 11, 24 (Tex. App.—Houston [14
Dist.] 2006, no pet.); Tex. R. Civ. P.
295.  Because Wiseman did not timely raise this complaint, we will not attempt
to reconcile the purportedly inconsistent findings.  See Springs Window
Fashions Div., Inc. v. Blind Maker, Inc., 184 S.W.3d 840, 867 (Tex.
App.—Austin 2006, pet. granted, judgm’t vacated w.r.m.).[7]  Moreover, the remedy for a judgment based on
factually insufficient evidence is a new trial, not substitution of one finding
for another.  See Glover v. Tex. Gen. Indem. Co., 619 S.W.2d 400, 401–02
(Tex. 1981) (per curiam).  Wiseman has not requested a new trial, and at oral
argument, Wiseman’s counsel affirmatively stated that Wiseman does not want a
new trial.  We therefore overrule Wiseman’s second issue.[8]

V.  Conclusion

            For the foregoing reasons, the
judgment of the trial court is affirmed.  

 

                                                                                    

                                                                        /s/        Tracy
Christopher

                                                                                    Justice

 

 

 

Panel consists of Justices Anderson,
Boyce, and Christopher.









[1] The “circulation of mud”
is defined as “[t]he return to the surface of a portion of the drilling [mud] .
. . .”  Howard R. Williams & Charles
J. Meyers, Manual of Oil & Gas Terms 139 (Patrick H. Martin &
Bruce M. Kramer eds., 14th ed. 2009) (1957).





[2] “The term ‘junk’ is a
term of art used in the oil and gas industry to refer to ‘non-drillable
material such as steel or iron, in [a] well bore.’”  Exxon Corp. v. Emerald
Oil & Gas Co., 52 Tex. Sup. Ct. J. 467, 468 n.7, 2009 WL 795668, at *2
n.7 (Tex. Mar. 27, 2009) (quoting Tarrant County Water Control &
Improvement Dist. No. One v. Fullwood, 963 S.W.2d 60, 67 (Tex. 1998) (per
curiam)).  The term also may be used as a verb.





[3] An “overshot” is “a
fishing tool used to recover lost pipe in a drilled well.”  Webster’s Third
New Int’l Dictionary, 1610 (1993).  A “packer” is “a device for packing the
space between the wall of an oil well and the pipe or between two strings of
pipe.”  Id. at 1618.





[4] Each also asserted claims
against any upstream sellers, but these claims were not presented to the jury. 





[5] The jury found that no
attorney’s fees would be necessary in the event of an appeal, and this finding
was not challenged.  The jury’s answers to the remaining questions have not
been challenged on appeal.





[6] Regarding the
proportionate-responsibility provision of section 33.002, see Act of
June 3, 1987, 70th Leg., 1st C.S., ch. 2 § 2.05, 1987 Tex. Gen. Laws 37,
41, amended by Act of May 29, 1989, 71st Leg., ch. 380 § 4, 1989
Tex. Gen. Laws 1490, 1492, amended by Act of May 8, 1995, 74th Leg., ch.
136, § 1, 1995 Tex. Gen. Laws 971, 971–72, amended by Act of May
19, 1995, 74th Leg., ch. 414, § 17, 1995 Tex. Gen. Laws 2988, 3003, amended
by Act of May 21, 2001, 77th Leg., ch. 643, § 2, 2001 Tex. Gen. Laws
1208, 1208–09, amended by Act of June 2, 2003, 78th Leg., ch. 204,
§§ 4.01, 4.10(1), 2003 Tex. Gen. Laws 847, 855, 859.





[7] Nor do we imply that a
court may reconcile inconsistent findings by substituting a higher damage
figure for a lower one.  See, e.g., Aztec Corp. v. Tubular Steel, Inc.,
758 S.W.2d 793, 800 (Tex. App.—Houston [14th Dist.] 1988, no writ) (“We cannot
substitute our judgment for that of the jury and order additur . . . .”).





[8] In a footnote, Wiseman further
asserts that the trial court also should have included breach of an implied
warranty as an alternative basis for the judgment against Cressman.  As
previously discussed, however, the jury’s proportionate-responsibility findings
apply to such claims.  Wiseman’s recovery against Cressman for breach of an implied
warranty therefore would be less than the recovery for breach of an express
warranty, and a plaintiff is entitled to judgment on the theory that affords
the greatest or most favorable relief.  Tex.
R. Civ. P. 301; Boyce Iron Works, Inc. v. Sw. Bell Tel. Co., 747
S.W.2d 785, 787 (Tex. 1988).