Affirmed and Memorandum Opinion filed October 14, 2010.

 

In The

 

Fourteenth Court of
Appeals

___________________

 

NO. 14-09-00273-CV

___________________

 

Duncan M. Harrison, Jr., D/B/A Paveco asphalt
paving, Appellant

 

V.

 

J.W. Nelson Transports, Inc., d/b/a Groendyke,
Appellee



 



 

On
Appeal from the 189th District Court

Harris County,
Texas



Trial Court Cause No. 2006-71954

 



 

 

MEMORANDUM OPINION

            Appellee J.W. Nelson Transports, Inc., d/b/a Groendyke
(“Groendyke”) filed suit against appellant Duncan M. Harrison, Jr. (“Harrison”
or “Harrison, Jr.”), alleging causes of action for negligence, negligent
misrepresentation, and breach of warranty. The trial court awarded Groendyke
damages and stipulated attorney’s fees. Harrison now challenges the judgment,
arguing that the evidence is legally insufficient to support any of Groendyke’s
claims. Harrison also argues that the trial court erred in entering a final judgment
nunc pro tunc. We affirm.

BACKGROUND

            Harrison
is the owner of Paveco Asphalt Paving, a company that specializes in asphalt
installation, repair, and resurfacing. Harrison observed Groendyke’s trucking facility
while repairing an asphalt parking lot at a nearby terminal in Lake Charles,
Louisiana. Groendyke’s parking lot was a composite of dirt, shell, and
limestone, and Harrison offered to apply asphalt to its surface. According to Brad
Nelson, Groendyke’s terminal manager, the parking lot was already in a good,
functional condition. Groendyke accepted the offer, however, because drivers
often complained of tracking dirt into their trucks. By the terms of their
contract, Harrison agreed to prepare the base and apply the asphalt for
$99,500. The contract expressly provided an unconditional one-year warranty.

Harrison completed the
parking lot in January 2005. Just over four months later, Groendyke paid an
additional $20,000 for Harrison to apply a protective sealant to the asphalt.
At the time of contract, Harrison represented that by shielding the asphalt
from moisture and sun damage, the sealant would extend the life of the asphalt anywhere
between ten and fifteen years. Without the sealant, the asphalt was expected to
last twenty to thirty years.

            Within
two weeks of the date the sealant was applied, the asphalt began to show signs
of deterioration, including cracks and deep rutting. In some areas, the asphalt
completely broke apart. Harrison visually inspected the asphalt after receiving
notice of the problems, but he did not offer to fix any of the damage. In his
opinion, the deterioration was caused by a failure of the base. 

            Groendyke
hired civil engineer Walt Jessen to determine whether the parking lot could be repaired.
Because of the widespread damage, Jessen recommended that Groendyke remove the
asphalt entirely and replace it with a concrete parking lot. Groendyke agreed
to Jessen’s plan in 2007.

            Groendyke
sued Harrison and his father, Duncan M. Harrison, Sr., both d/b/a Paveco
Asphalt Paving. Groendyke subsequently dismissed Harrison’s father from the
suit. 

            At
trial, Nelson testified that his employees resumed parking their trucks at the
terminal immediately after Harrison laid the asphalt. Even though some trucks
carried loads in excess of forty tons, Nelson testified that the asphalt
sustained no visible damage until one or two weeks after the sealant’s
application. During the concrete installation project, Nelson discovered that
the base underlying the asphalt was completely saturated with moisture. He
testified that it was “no longer usable,” and that its replacement cost was approximately
$68,000.

            Jessen
testified that sealant should never be applied four months after asphalt has
been laid. In his experience, sealants are strictly maintenance devices, used,
for example, when cracks start to develop. At only four months, he stated, properly-applied
asphalt should not show any signs of aging or distress. When questioned whether
the sealant would trap subsurface moisture beneath the asphalt, Jessen answered
that it “should create a waterproof barrier.”

Harrison testified that
he would not have recommended application of the asphalt if he had seen any
preexisting problems with the base. He also testified that he had not observed
any deterioration in the asphalt prior to the application of the sealant.
Harrison defended his decision to apply the sealant four months after laying
the asphalt, stating that his practice has always been to wait at least ninety
days and that he has never experienced any similar problems in the past. He
conceded, however, that (1) he had not previously applied this brand of
sealant in Louisiana; (2) he experienced subsurface moisture problems
while repairing the asphalt at the adjacent terminal in Lake Charles; (3) he
failed to investigate the soil conditions at the Groendyke terminal; and (4) he
did not ask the sealant’s manufacturer about its application in areas, such as
Lake Charles, that are below sea level. Harrison also testified that it “makes
sense” the sealant could trap moisture beneath the surface and that he was
“pretty close to agreeing” the asphalt would not have deteriorated but for the
sealant’s application.

            The
jury found Harrison liable for negligence, negligent misrepresentation, and
breach of warranty, and on December 30, 2008, the trial court awarded Groendyke
$167,517.24 for damages and $40,708 for attorney’s fees. The judgment
incorrectly named Harrison’s father as the defendant. On May 8, 2009, the trial
court entered a final judgment nunc pro tunc, correcting the earlier
order. Harrison now appeals the legal sufficiency of the evidence and the validity
of the final judgment nunc pro tunc.

ANALYSIS

A.   
Legal Sufficiency

            In
his first three issues, Harrison challenges the sufficiency of the evidence for
each of the jury’s findings of liability. We initially address the finding of
breach of warranty, for which Harrison contends there is no evidence of
causation. In a legal sufficiency challenge, we consider whether the evidence
at trial would enable a reasonable and fair-minded jury to reach the verdict
under review. City of Keller v. Wilson, 168 S.W.3d 802, 827 (Tex. 2005).
We “must credit favorable evidence if reasonable jurors could, and disregard
contrary evidence unless reasonable jurors could not.” Id. We will only reverse
the judgment if (a) there is a complete absence of a vital fact,
(b) the court is barred by rules of law or of evidence from giving weight
to the only evidence offered to prove a vital fact, (c) the evidence
offered to prove a vital fact is no more than a mere scintilla, or (d) the
evidence establishes conclusively the opposite of the vital fact. Id. at
810 (citing Robert W. Calvert, “No Evidence” & “Insufficient Evidence”
Points of Error, 38 Tex. L. Rev.
361, 362–63 (1960)). The record contains more than a mere scintilla of evidence—and
thus the evidence is legally sufficient—if reasonable minds could form
differing conclusions about a vital fact’s existence. Lee Lewis Constr.,
Inc. v. Harrison, 70 S.W.3d 778, 782–83 (Tex. 2001). Conversely, the record
is insufficient when the evidence offered to prove a vital fact is so weak as
to do no more than create a mere surmise or suspicion of its existence. Ford
Motor Co. v. Ridgway, 135 S.W.3d 598, 601 (Tex. 2004).

The trial court charged
the jury to find Harrison liable if his failure to comply with a warranty was a
producing cause of Groendyke’s damages. “Producing cause” was defined as “an
efficient, exciting, or contributing cause that, in a natural sequence,
produced the damages, if any.” But see Ford Motor Co. v. Ledesma, 242
S.W.3d 32, 46 (Tex. 2007) (abrogating a decision based on a charge containing
such language and explaining that this definition is incomplete). Harrison did
not object to the charge at trial and does not challenge it on appeal. We
therefore measure the sufficiency of the evidence using the charge actually
given. Osterberg v. Peca, 12 S.W.3d 31, 55 (Tex. 2000).

Viewing the evidence in
the light most favorable to the verdict, we conclude that there was more than a
scintilla of evidence to show that Harrison’s breach of an express warranty was
a producing cause of Groendyke’s damages. The jury heard ample testimony that
the sealant caused the base of the parking lot to fail, thereby precipitating the
deterioration of the asphalt. Jessen testified that the sealant “should create
a waterproof barrier,” and Harrison testified it “makes sense” that the sealant
could trap moisture beneath the asphalt, even though its primary purpose was to
prevent water from penetrating from above. Nelson testified that he first noticed
signs of deterioration in the asphalt within a week or two after the sealant
was applied. He also stated that much of the base had to be replaced during the
concrete installation because its high moisture content rendered it “no longer
usable.” Even Harrison testified he was “pretty close to agreeing” that the
asphalt would not have deteriorated if the sealant had not been applied.

In addition to a warranty
for the sealant, Harrison also warranted the asphalt installation for one year.
The asphalt failed within one year. While Harrison argues that he was only
giving a warranty on the asphalt itself—and not the base—the job included
preparing the site, grading the lot for proper drainage, installing base as
needed in low areas, compacting the base with a five-ton roller, and applying
emulsion tack coat to the base. The handwritten warranty was at the bottom of
the contract (including all of the work to the base) and contains the term “1
year warranty.” There is nothing in the contract that would limit the warranty
to the asphalt itself. Harrison admits the base failed causing the asphalt to
fail, a breach of the one-year warranty. 

            Because
Harrison’s breach of warranty fully supports Groendyke’s recovery of both
damages and attorney’s fees, we need not address Harrison’s challenges
regarding the negligence and negligent misrepresentation theories of liability.
See Tex. R. App. P. 47.1; Checker
Bag Co. v. Washington, 27 S.W.3d 625, 634 (Tex. App.—Waco 2000, pet.
denied) (“In cases where the judgment rests on multiple theories of recovery,
an appellate court need not address all causes of action if any one theory is
valid.”); see also Tex. Civ.
Prac. & Rem. Code § 38.001 (Vernon 2008) (permitting recovery
of reasonable attorney’s fees on claims of an oral or written contract); Med.
City Dallas, Ltd. v. Carlisle Corp., 251 S.W.3d 55, 63 (Tex. 2008) (breach
of express warranty included within section 38.001). We therefore overrule
Harrison’s first, second, and third issues.

B.    
Nunc Pro Tunc

In his fourth issue,
Harrison argues that the trial court could not enter the final judgment nunc
pro tunc because the error in the original judgment was judicial, rather
than clerical. A clerical error involves a mistake or omission in the entry of
a judgment. LaGoye v. Victoria Wood Condo. Ass’n, 112 S.W.3d 777, 783
(Tex. App.—Houston [14th Dist.] 2003, no pet.); e.g., Nolan v. Bettis,
562 S.W.2d 520, 522–23 (Tex. Civ. App.—Austin 1978, no writ) (concerning a
misprint in the date of judgment). The trial court may correct clerical errors
at any time by a judgment nunc pro tunc, even after it has lost its
plenary power over the judgment. Tex. R.
Civ. P. 316; see also Tex.
R. Civ. P. 329b(e) (trial court may vacate, modify, correct, or reform a
judgment no later than thirty days after a motion for new trial has been
overruled). A judicial error, by contrast, occurs in the judgment’s rendition. Escobar
v. Escobar, 711 S.W.2d 230, 231 (Tex. 1986); e.g., Finlay v.
Jones, 435 S.W.2d 136, 137–39 (Tex. 1968) (concerning recital that
defendant had been duly served with citation). “[R]endition is the judicial act
by which the court settles and declares the decision of the law upon the
matters at issue. Its entry is the ministerial act by which an enduring
evidence of the judicial act is afforded.” Coleman v. Zapp, 151 S.W.
1040, 1041 (Tex. 1912). If the error is judicial, rather than clerical, the
error may only be corrected by appeal, writ of error, or bill of review. See
Comet Aluminum Co. v. Dibrell, 450 S.W.2d 56, 58 (Tex. 1970). Whether an
error in the judgment is clerical or judicial is a question of law;
accordingly, our review is de novo. LaGoye, 112 S.W.3d at 783.

In this case, the trial
court entered a final judgment against Harrison, Sr., a party who had been dismissed
before the case ever proceeded to trial. More than four months later, after its
plenary power expired, the trial court entered a final judgment nunc pro
tunc, correcting the earlier order to reflect a judgment against Harrison,
Jr. alone. The misidentification of the defendant in this case occurred as an
inaccurate recording during the entry of the judgment. Because the misprint is
a typographical mistake not resulting from judicial reasoning or determination,
it is a clerical error subject to a judgment nunc pro tunc. See
Andrews v. Koch, 702 S.W.2d 584, 585 (Tex. 1986) (per curiam). Any holding
to the contrary would depart from years of settled law. See, e.g., Gooch
v. Morris, No. 10-05-00069-CV, 2006 WL 348706, at *1 (Tex. App.—Waco Feb.
15, 2006, no pet.) (mem. op.) (correcting misprint of “Jeffrey Gooch” to
“Jeffery Gooch”); Carlyle Real Estate Ltd. P’ship-X v. Leibman, 782
S.W.2d 230, 231–33 (Tex. App.—Houston [1st Dist.] 1989, no writ) (correcting
omission of single letter from a party name); Whicker v. Taylor, 422
S.W.2d 609, 610 (Tex. Civ. App.—Waco 1967, no writ) (correcting inversion of
party initials); Kendall v. Johnson, 212 S.W.2d 232, 236–37 (Tex. Civ.
App.—San Antonio 1948, no writ) (correcting omission of suffix from a party
name).

Harrison nonetheless
contends the error in this case is judicial because Groendyke drafted the final
judgment and, under the authority of In re Fuselier, “a drafting error
by a party’s attorney does not constitute ‘clerical error.’” 56 S.W.3d 265, 268
(Tex. App.—Houston [1st Dist.] 2001, no pet.). But Fuselier is readily
distinguishable. The error in Fuselier occurred during rendition when
the trial court signed an order drafted by counsel dismissing a claim “with
prejudice.” Id. at 266. Despite having no personal recollection of the
case, the trial court subsequently entered an order nunc pro tunc
modifying the earlier order to read “without prejudice.” Id. at 267. The
court of appeals ruled the order nunc pro tunc void because, under those
circumstances, the errors of counsel became part of the court’s judgment as rendered.
Id. at 268. Fuselier involved an error arising neither from the
entry of a judgment nor from the misidentification of a party. Therefore, it has
no application to the facts of this case.

Because the correction
of a party’s name was a clerical error, the judgment nunc pro tunc is
valid. We overrule Harrison’s fourth issue.

CONCLUSION

            Having overruled the issues presented, we
affirm the trial court’s judgment.

 

                                                                                    

                                                                        /s/        Tracy
Christopher

                                                                                    Justice

 

 

 

Panel consists of Justices
Seymore, Boyce, and Christopher.