**½ PRICE CHECKS CASHED,
Petitioner,**

v.

**UNITED AUTOMOBILE INSURANCE
COMPANY, Respondent.**

**No. 10–0434.**

Supreme Court of Texas.

Argued Feb. 3, 2011.

Decided June 24, 2011.

Gavin Neal Lewis, Aledo, William S. Rhea, DuBois, Bryant & Campbell, L.L.P, Austin, for 1/2 Price Checks Cashed.

Theodore Cassiday Keramidas, T. Cass Keramidas, P.C., Richardson, Joe Michael Russell II, The Russell Firm, P.C., Plano, Richard J. Byrne, Ekzall & Byrne, Dallas, Christopher Snead, Barbara, Snead & Herrera, Plano, Douglas W. Alexander, Dana Livingston, Amy Warr, Alexander Dubose & Townsend, L.L.P., Austin, for United Automobile Insurance Company.

William H. Lawrence, for Amicus Curiae William H. Lawrence.

William S. Rhea, DuBois, Bryant & Campbell, L.L.P., for Amicus Curiae Money Box.

Charles A. Ruesink, Austin, for Amicus Curiae The Texas Association of Check Cashers, et al.

E. Thomas Bishop, Bishop & Hummert, P.C., Dallas, for Amicus Curiae Property Casualty Insurers Association of America.

Justice GUZMAN delivered the opinion of the Court.

Article 3 of the Uniform Commercial Code (UCC)[1] establishes a comprehensive scheme governing the procedures, liabilities, and remedies pertaining to negotiable instruments, including checks.[2] As part of that scheme, when a bank dishonors a check, the drawer[3] of the check is obligated to pay the amount of the check to the check's holder[4] according to its terms at the time it was issued. TEX. BUS. & COM. CODE § 3.414(b).[5] Neither section 3.414,

---

1. Texas's version of the UCC is codified in the Business and Commerce Code, and employs the term "chapter" rather than "article." Throughout this opinion, we use the term "article" rather than "chapter" because that is the term used in the UCC.

2. Article 3's definition of a negotiable instrument includes a check. *See* TEX. BUS. & COM. CODE § 3.104(a), (c), (f).

3. A check's drawer is the one who signs or is otherwise identified as a person ordering payment. *Id.* § 3.103(a)(5).

4. A holder is a "person in possession of a negotiable instrument that is payable either to bearer or to an identified person." *Id.* § 1.20 1(b)(21)(A).

5. Section 3.414(b) specifically provides:

 (b) If an unaccepted draft is dishonored, the drawer is obliged to pay the draft (i) according to its terms at the time it was issued or, if not issued, at the time it first came into possession of a holder, or (ii) if the drawer signed an incomplete instrument, according to its terms when completed, to the extent stated in Sections 3.115

nor any other provision of the UCC, provides for the recovery of attorney's fees in those circumstances. But a general statute for civil suits—Texas Civil Practice and Remedies Code section 38.001(8)—allows a claimant to recover attorney's fees in a suit on a contract. The intersection of these two statutes frames the issue before us—specifically, whether a holder of a dishonored check may recover attorney's fees under section 38.001(8) in an action against a check's drawer under section 3.414.

Here, the check's holder successfully sued the drawer for breach of its obligation to pay a dishonored check under section 3.414, and was awarded attorney's fees under section 38.001(8). The court of appeals reversed, concluding that section 38.001(8) did not apply to the holder's suit because the claim was "purely statutory" rather than contractual. We must determine whether a suit by a check's holder against its drawer under section 3.414 is a claim on a contract to which section 38.001(8) applies. We conclude that it is. Accordingly, we reverse the court of appeals' judgment and remand to the trial court for a determination of attorney's fees.

## I. Background

As part of an automobile insurance agreement, respondent United Automobile Insurance Company (UAIC), the check's drawer, issued a check for $1,288.64 payable to "Patrick Bretton, Brandy Bretton and DBD Motor Co., Inc." The Brettons and a representative of DBD Motor endorsed the check, and the Brettons cashed the check at 1/2 Price Checks Cashed (Half–Price), at which point Half–Price became the holder of the check. Half–Price endorsed the check and deposited it with its own bank. When Half–Price's bank presented the check to UAIC's bank—the drawee—for acceptance, however, UAIC's bank dishonored the check by refusing payment, and the check was returned to Half–Price marked "Refer to Maker." [6] Half–Price notified UAIC of its claim and requested payment. But UAIC denied liability and refused to pay.

Half–Price brought the instant suit in a Dallas County justice court, asserting breach of contract on the basis of the obligation owed by the drawer of a check under Texas Business and Commerce Code section 3.414. Half–Price further requested attorney's fees, contending that its claim was on a contract under Texas Civil Practice and Remedies Code section 38.001(8). The justice court granted Half–Price summary judgment for the amount of the check, statutory returned check fees, and attorney's fees. UAIC appealed de novo to the county court at law, where Half–Price again was granted summary judgment. The county court at law awarded Half–Price damages of $1,279.98, court costs of $97.00, attorney's fees of $2,995.00, and set post-judgment interest at five percent. UAIC appealed the attorney's fees issue to the court of appeals, which reversed the county court at law on that issue, but affirmed the court's judgment in all other respects. Relying on its previous decision in *Time Out Grocery v. Vanguard Group, Inc.*, 187 S.W.3d 41 (Tex.App.-Dallas 2005, no pet.), the court of appeals

and 3.407. The obligation is owed to a person entitled to enforce the draft or to an indorser who paid the draft under Section 3.415.
*Id.* § 3.414(b). A check's holder is "a person entitled to enforce" the draft. *Id.* § 3.301. Section 3.414 does not apply to a cashier's

check or other draft drawn on the drawer. *Id.* § 3.414(a).

**6.** UAIC's bank appears to have dishonored the check because the signature of DBD Motor's representative was partially covered by Half–Price's stamp.

concluded that section 38.001(8) does not apply to an action on a dishonored check under section 3.414 because such a claim is "purely statutory" and is not a claim on a contract. 310 S.W.3d 197, 199.

Half–Price petitioned this Court for review of the attorney's fees issue. We granted review to determine whether a claim by a check's holder against the drawer under section 3.414 is a claim on a contract to which section 38.001(8) applies.[7]

## II. Discussion

### A. Is a Holder's Section 3.414 Claim Against a Drawer a Contractual Claim to Which Section 38.001(8) Applies?

■ Texas adheres to the American Rule for the award of attorney's fees, under which attorney's fees are recoverable in a suit only if permitted by statute or by contract. *See, e.g., Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Research Corp.*, 299 S.W.3d 106, 120 (Tex. 2009); *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 310–11 (Tex.2006).[8] Texas Civil Practice and Remedies Code section 38.001 is one of several statutes modifying the American Rule. It provides, in relevant part:

> A person may recover reasonable attorney's fees from an individual or corporation, in addition to the amount of a valid claim and costs, if the claim is for:
> ... (8) an oral or written contract.

TEX. CIV. PRAC. & REM.CODE § 38.001(8).[9] The Legislature instructs us to construe section 38.001 "liberally ... to promote its underlying purposes." *See id.* § 38.005.[10]

---

**7.** Because this suit originated in a justice court and was appealed de novo to a county court at law, we briefly address our jurisdiction. We generally lack jurisdiction over a suit "appealed from a county court or from a district court when, under the constitution, a county court would have had original or appellate jurisdiction of the case." TEX. GOV'T CODE § 22.225(b)(1). Several exceptions apply to the limits established in section 22.225(b)(1), however, including when one court of appeals holds differently from a prior decision of another court of appeals or of this Court. *See id.* § 22.225(c). As we will discuss later, the courts of appeals have reached conflicting decisions on the issue of whether a prevailing claimant in a suit under section 3.414 may recover attorney's fees under section 38.001(8). *Compare, e.g., Time Out Grocery*, 187 S.W.3d at 44, *with, e.g., Barham v. Sugar Creek Nat'l Bank*, 612 S.W.2d 78, 80 (Tex.Civ.App.-Houston [14th Dist.] 1981, no writ). Thus, we possess jurisdiction over Half–Price's petition for review.

**8.** The opposite rule is the English Rule, in which a court may award attorney's fees to the prevailing party in a suit. *See* Jennifer M. Smith, *Credit Cards, Attorney's Fees, and the Putative Debtor: A Pyrrhic Victory? Putative Debtors May Win the Battle But Nevertheless Lose the War*, 61 ME. L.REV. 171, 187 (2009); David T. Schaefer, Note, *Attorney's Fees for*

*Consumers in Warranty Actions—An Expanding Role for the U.C.C.?*, 61 IND. L.J. 495, 497–98 (1986).

**9.** As we discussed in *Medical City*, the Legislature enacted the legislation on which section 38.001 is based over 100 years ago. *Med. City Dallas, Ltd. v. Carlisle Corp.*, 251 S.W.3d 55, 58 (Tex.2008) (citing Act of Mar. 13, 1909, 31st Leg., R.S., ch. 47, § 1, 1909 Tex. Gen. Laws 93, 94). The legislation did not initially include general contract claims, but was amended several times over the years to expand its reach, most recently in 1977 when the Legislature added "suits founded on oral or written contracts" to the claims for which recovery of attorney's fees was authorized. *Id.* at 59 (citing Act of Apr. 25, 1977, 65th Leg., R.S., ch. 76, § 1, 1977 Tex. Gen. Laws 153, 153–54). Article 2226—the predecessor statute to Chapter 38—was nonsubstantively recodified as Chapter 38 in 1985. *See* Act of May 17, 1985, 69th Leg., R.S., ch. 959, § 1, secs. 1.001, 38.001–.006, § 9, 1985 Tex. Gen. Laws 3242, 3244, 3278–79, 3322 (current version at TEX. CIV. PRAC. & REM.CODE §§ 1.001, 38.001–.006). Throughout this opinion, for ease of reference, we will refer to Chapter 38 and its provisions when citing references to former article 2226.

**10.** Chapter 38 originally did not provide for a liberal construction, and was construed strict-

Although Chapter 38 does not explain its "underlying purposes," there are at least two reasons for allowing a claimant to recover attorney's fees on a contract suit. First, a wronged claimant may recover the full amount of her damages—including costs in having to litigate the suit—from the wrongdoer, so that she is made whole. *See Shook v. Walden*, 304 S.W.3d 910, 922 (Tex.App.-Austin 2010, no pet.). And, second, a party with a small but valid contract claim [11] is more likely to hazard bringing suit since the claimant may recover attorney's fees if successful, even if the potential amount of attorney's fees is greater than the amount of the contract.[12] Section 38.001's establishment of a one-way fee shift means that a claimant does not risk having to pay the defendant's attorney's fees if the suit is unsuccessful. *See* TEX. CIV. PRAC. & REM.CODE § 38.001.

■ To recover attorney's fees under section 38.001, a claimant must meet several prerequisites. The claimant must: (1) plead and prevail on a claim for which attorney's fees are permitted under section 38.001, (2) be represented by an attorney, (3) present the claim to the opposing party or his agent, and (4) demonstrate that the opposing party did not tender payment within thirty days after the claim was presented. *See id.* §§ 38.001, .002. Additionally, Chapter 38 excludes various types of contracts from its reach—specifically, certain contracts issued by insurers. *See id.* § 38.006. Here, Half–Price was represented by an attorney, presented its claim to UAIC, and established that UAIC did not tender payment within thirty days. Further, Half–Price is not suing on an excluded insurance contract. Thus, our sole inquiry in determining if Half–Price may collect attorney's fees is whether its suit is a claim on a contract to which section 38.001(8) applies.

■ As a threshold matter, we decide whether a check is a contract. We conclude that it is. It is settled law that a check—as a type of negotiable instrument—is a formal contract, a rule established not only in treatises [13] but also the common law of this state [14] and other

ly by the courts. *See, e.g., Van Zandt v. Fort Worth Press*, 359 S.W.2d 893, 895 (Tex.1962) (observing that Chapter 38 is to be strictly construed since it allows for the recovery of attorney's fees and is penal in nature). However, two years after section 38.001 was amended to include contract claims, the Legislature enacted legislation requiring a liberal construction of Chapter 38. *See Med. City*, 251 S.W.3d at 59 (citing Act of June 6, 1979, 66th Leg., R.S., ch. 314, § 1, 1979 Tex. Gen. Laws 718, 718). Since then, in line with the Legislature's instruction, we have construed the statute liberally. *See, e.g., id.* at 59; *Jones v. Kelley*, 614 S.W.2d 95, 100 (Tex.1981).

**11.** Chapter 38 does not provide for a monetary floor as to the amount of a contract subject to section 38.001's application. *See* TEX. CIV. PRAC. & REM.CODE §§ 38.001–.006.

**12.** *See* Smith, *supra* note 8, at 188 (noting that some scholars have criticized the American Rule as denying access to the courts for low-income litigants and those with small claims); Elizabeth Stone Miller, Comment, *Article 2226 and Suits on Insurance Contracts: Who Pays the Attorney's Fees?*, 36 BAYLOR L.REV. 197, 210 (1984) ("The statue provides that in every contract, from a simple agreement by telephone to a complicated construction contract, there is the potential for the recovery of attorney's fees upon prevailing in a suit for breach.").

**13.** *See, e.g.*, RESTATEMENT (SECOND) OF CONTRACTS § 6 (1981); RESTATEMENT OF CONTRACTS § 7 (1932); 22 RICHARD A. LORD, WILLISTON ON CONTRACTS § 60:1 (4th ed. 2002) ("[N]egotiable instruments ... constitute formal contracts or sets of contracts."); JOHN EDWARD MURRAY, JR., MURRAY ON CONTRACTS § 16 (4th ed.2001); 3 ERIC MILLS HOLMES, CORBIN ON CONTRACTS § 10.21 (rev. ed.1996).

**14.** *See, e.g., Castilleja v. Camero*, 414 S.W.2d 424, 427 (Tex.1967) ("Checks are governed by the same conflicts rules as are contracts,

states.[15] A negotiable instrument is "an unconditional promise or order to pay a fixed amount of money," TEX. BUS. & COM. CODE § 3.104(a), a definition that fits squarely within the meaning of a contract as "a promise or a set of promises for the breach of which the law gives a remedy, or the performance of which the law in someway recognizes as a duty," *see* RESTATEMENT (SECOND) OF CONTRACTS § 1 (1981).[16] The drawer of a check has a clear obligation to pay the holder of a dishonored check under section 3.414. *See* TEX. BUS. & COM.CODE § 3.414; FRED H. MILLER & ALVIN C. HARRELL, THE LAW OF MODERN PAYMENT SYSTEMS AND NOTES § 1.03 (practitioner's ed. 2002) ("A negotiable instrument is a contract. The contractual nature of a negotiable instrument is evident in the case of a promissory note, where there is an express promise to pay. But it is also true of drafts, where the promise to pay is implied.... Article 3 thus constitutes a

special body of legal rules governing the particular kinds of contracts called negotiable instruments.").

The parties dispute, however, whether a claim by an endorsee holder of a check against a drawer under section 3.414 is a contractual claim.[17] UAIC contends that while a suit by a payee against a check's drawer is undoubtably contractual in nature, a suit by a holder like Half–Price is merely a statutory claim inasmuch as the holder and drawer never entered into a contract with each other. The premise for UAIC's distinction is that a drawer (as the person writing the check) and a payee (as the person named as the recipient of the check) are both parties to the contract, while a holder is not identified anywhere within the four corners of the check and must instead seek relief under section 3.414 rather than the common law of contracts.

[thus] ... these checks were contracts to be performed in Texas and governed by Texas law."); *Ettl v. Rowe*, 462 S.W.2d 386, 387–88 (Tex.Civ.App.-El Paso 1970, no writ) (refuting assertion that a check is not a contract in writing, and applying statute of limitations for written contracts or instruments to a claim on a check); *McDonough v. Zamora*, 338 S.W.2d 507, 514 (Tex.Civ.App.-San Antonio 1960, writ ref'd n.r.e.) ("Actions upon negotiable instruments are contract actions."); *Metro. Loan Co. v. Reeves*, 236 S.W. 762, 762–63 (Tex.Civ.App.-San Antonio 1922, no writ) (referring several times to check as "contract"); *Schenck v. Foster Bldg. & Realty Co.*, 215 S.W. 877, 879 (Tex.Civ.App.-Beaumont 1919, no writ) ("Negotiable instruments are universally held to be contracts and subject to the same rules of construction.").

**15.** *See, e.g., Video Trax, Inc. v. NationsBank, N.A.*, 33 F.Supp.2d 1041, 1054 (S.D.Fla. 1998), *aff'd*, 205 F.3d 1358 (11th Cir.2000); *Williams v. State*, 333 So.2d 613, 613–14 (Ala. 1976); *Roff v. Crenshaw*, 69 Cal.App.2d 536, 159 P.2d 661, 662 (1945); *Blair v. Davis*, 281 So.2d 247, 249 (Fla.Dist.Ct.App.1973); *Byrd Printing Co. v. Whitaker Paper Co.*, 135 Ga.

865, 70 S.E. 798, 800 (1911); *Buono v. Nardella*, 344 Mass. 257, 182 N.E.2d 142, 143–44 (1962); *Diemar & Kirk Co. v. Smart Styles, Inc.*, 261 N.C. 156, 134 S.E.2d 134, 136 (1964); *Reeves v. Jurney*, 29 N.C.App. 739, 225 S.E.2d 615, 616 (1976); *First Nat'l Bank & Trust Co. of Tulsa v. Price*, 187 Okla. 380, 103 P.2d 103, 105 (1940).

**16.** *See also* MURRAY, *supra* note 13, § 2 ("We distinguish those promises that the law enforces from those that it does not enforce by calling the former 'contracts'.... [T]wo elements of a contract ... are critical: (1) It involves an undertaking or commitment (promise) that something shall or shall not be done in the future; and (2) the law sanctions such undertaking or commitment and puts its cohesive machinery behind it.").

**17.** When a payee is in possession of a negotiable instrument, the payee is a holder under the UCC's definition of a holder. *See* TEX BUS. & COM.CODE § 1.201(b)(21)(A) (defining holder as a "person in possession of a negotiable instrument that is payable either to bearer or to an identified person"). For the sake of simplicity in our discussion, however, we will

Whether a suit on a check is contractual, thus allowing for the recovery of attorney's fees under section 38.001(8), has recently divided the courts of appeals. Until the Dallas Court of Appeals' *Time Out Grocery* opinion, the courts of appeals that examined this issue held that such a suit is contractual in nature.[18] But in 2005, the Dallas Court of Appeals held that a claim under section 3.414 is statutory rather than contractual, and thus the holder was not entitled to attorney's fees under section 38.001(8). *Time Out Grocery*, 187 S.W.3d at 44–45. In reaching this holding, the court concluded that a check does not meet the requirements for the formation of a contract under the common law. *Id.* at 44. The court further distinguished previous court of appeals' opinions that had approved section 38.001(8) attorney's fees for claims on checks, observing that (1) the

*Time Out Grocery* suit involved an ordinary, rather than a cashier's, check, and (2) the claimant sued the drawer rather than the payee. *Id.*[19]

■ UAIC implicitly concedes that some of the reasoning in *Time Out Grocery* was flawed, specifically (1) the court's rationale that a formal contract must meet the same formation requirements as a simple contract in order to be considered a contract,[20] and (2) the court's attempt to distinguish a cashier's check from an ordinary check.[21] However, UAIC continues to argue that a suit by a holder against a drawer under section 3.414 lacks a contractual basis, albeit on grounds that the holder is not explicitly identified within the four corners of the check. We disagree and conclude that a suit on a check under section 3.414 is a suit on a contract, wheth-

refer to payee and holder distinctly, with the understanding that our reference to a holder is to an endorsee holder of the instrument.

**18.** *See Cmty. Nat'l Bank v. Channelview Bank*, 814 S.W.2d 424, 427 (Tex.App.-Houston [1st Dist.] 1991, no writ) (concluding that because a cashier's check is a written contract in which the drawer impliedly agrees to pay the face value to any authorized holder, check's holder was entitled to attorney's fees under section 38.001(8)); *Barham*, 612 S.W.2d at 80 (concluding that because holder's claim against payee under section 3.414 was a suit on a contract, payee was entitled to attorney's fees under section 38.001(8)); *Guardian Bank v. San Jacinto Sav. Ass'n,*· 593 S.W.2d 860, 863 (Tex.Civ.App.-Houston [1st Dist.] 1980, writ ref'd n.r.e.) (holding that "a cashier's check is a written contract with the maker impliedly agreeing to pay to any authorized holder the face value stated therein," and thus "one entitled to recover under the terms of that contract would also be entitled to recover reasonable attorney's fees" under section 38.001(8)).

**19.** In addition to the instant case, the San Antonio Court of Appeals reached a similar result in a case by a holder against a drawer under section 3.414, also relying on *Time Out*

*Grocery*. *See Zamora v. Money Box*, No. 04–08–00549–CV, 2009 WL 2050207, at *3–4 (Tex.App.-San Antonio July 15, 2009, pet. denied) (mem.op.).

**20.** As noted, the *Time Out Grocery* court concluded that a check is not a contract because it does not meet certain formation requirements for simple contracts, such as mutual assent. *Time Out Grocery*, 187 S.W.3d at 44. UAIC has conceded that a check is a formal contract, which includes unique formation requirements inapplicable to simple contracts. *See* 1 WILLISTON ON CONTRACTS § 1:1 (4th ed.2007) (discussing how the requirements for informal or simple contracts, such as consideration and mutual assent, "are generally inapplicable to formal contracts").

**21.** A cashier's check is a specialized type of check that differs from an ordinary check in that the bank issuing the check is both the drawer and drawee of the check. TEX. BUS. & COM.CODE § 3.104(f), (g). However, in the context of section 38.001(8), there is no real distinction between the obligation of a drawer of a cashier's check as compared to that of a ·drawer of an ordinary check. *Compare id.* § 3.412 (establishing obligation of issuer of cashier's check to pay person entitled to enforce the draft), *with id.* § 3.414 (establishing

er it is brought by a holder or a payee. We accordingly disapprove *Time Out Grocery* and its progeny.

 Contrary to UAIC's assertion, the drawer of a check enters into a contract in which the drawer unconditionally promises to pay not only the payee, but also a subsequent holder of the instrument. Because the check itself is the contract, it embodies the full agreement between the parties, as manifested by the drawer's signature on the check; in signing the check, the drawer contractually obligates itself to pay the amount of the instrument to the instrument's holder. *See* 22 RICHARD A. LORD, WILLISTON ON CONTRACTS § 60:1 (4th ed.2002).[22] When a check is appropriately transferred to another person by endorsement, the transfer vests in the transferee any right of the transferor to enforce the check. *See* TEX. BUS. & COM.CODE §§ 3.201, .203. Thus, the drawer's obligation extends not just to the payee, but also to any downstream holder of the instrument. The crux of a claim under section 3.414—whether brought by a payee or holder—is that the drawer possesses an obligation to pay the check according to its terms in the event the drawer's bank dishonors the instrument. *See id.* § 3.414(b); WILLIAM H. LAWRENCE, UNDERSTANDING NEGOTIABLE INSTRUMENTS AND

PAYMENT SYSTEMS § 4.02 (2002) ("The [drawer's] signature constitutes the outward manifestation of an intent to be bound that subsequent parties are reasonably entitled to rely upon. . . . These consequences have their legal support in the Article 3 contracts."). And when a drawer does not honor that obligation and the holder sues the drawer, the suit is on the instrument—and thus the contract—itself. *See* LAWRENCE, *supra,* §§ 4.02-.03 ("A lawsuit brought on the instrument is premised on contract liability arising from the defendant's signature. . . . In the absence of an explicit disclaimer, everyone who signs a negotiable instrument promises to pay it. This promise is a significant part of the conceptual basis for recognizing liability on the instrument as contractual liability."). Article 3's identical remedies for payee and holder when suing the drawer for a dishonored instrument further evidences the infirmity of UAIC's distinction. *See* TEX. BUS. & COM.CODE § 3.414(b).

Section 3.414's codification of a drawer's obligation to pay a holder does not alter our conclusion. Article 3 is based on the common law of contracts regarding negotiable instruments—specifically the law merchant.[23] The law merchant was codified as the Uniform Negotiable Instruments Law (NIL) beginning in 1896, and

obligation of drawer of check to pay person entitled to enforce the draft).

22. *See also Diemar,* 134 S.E.2d at 136–37 ("A check is a contract within itself. By the act of drawing and delivering [a check] to the payee, the drawer commits himself to pay the amount of the check in the event the drawee refuses payment upon presentment."); Barry L. Zaretsky, *Contract Liability of Parties to Negotiable Instruments,* 42 ALA. L.REV. 627, 635 (1991) ("[T]he drawer is the party to whom the person entitled to enforce the instrument will look when enforcing the obligation. . . . The drawer contracts to pay the amount of the draft if it is not paid by the drawee. . . .").

23. *See, e.g.,* 22 WILLISTON ON CONTRACTS § 60:1; ROY RYDEN ANDERSON ET AL., ANDERSON, BARTLETT & EAST'S TEXAS UNIFORM COMMERCIAL CODE ANNOTATED § 3.101 cmt. (2007) ("Texas common law of negotiable instruments was based on the law merchant."); Donald W. Garland, *A New Law of Negotiable Instruments: Revised Article 3 of the UCC,* 109 BANKING L.J. 557, 557 (1992) (discussing article 3's roots in English law from the 1700s); Lary Lawrence, *What Would Be Wrong with a User–Friendly Code?: The Drafting of Revised Articles 3 and 4 of the Uniform Commercial Code,* 26 LOY. L.A. L.REV. 659, 659–60 (1993) (observing that article 3 of the UCC is based on the Uniform Negotiable Instruments Law, which, in turn, is based on English common law).

was eventually adopted by every state, including, in 1919, Texas. 22 WILLISTON ON CONTRACTS § 60:1; ROY RYDEN ANDERSON ET AL., ANDERSON, BARTLETT & EAST'S TEXAS UNIFORM COMMERCIAL CODE ANNOTATED § 3.101 cmt. (2007). Article 3 is the successor of the NIL. 22 WILLISTON ON CONTRACTS § 60:1.

Even before the codification of the law merchant in the NIL, and certainly before the codification of article 3, this Court observed that a check is a contract, and treated suits on checks as suits on contracts. *See Yale v. Ward*, 30 Tex. 17, 23 (1867) ("[The drawer's] contract under the law merchant is, that if the drawee shall not accept the bill [of exchange] when presented, or shall not pay it when it becomes payable, and the holder shall give him due notice thereof, then he will pay the amount of the bill."). A holder's ability to sue on the instrument, as codified in section 3.414, is equally a common law principle. As early as 1758, in the seminal English commercial paper case, *Miller v. Race*, a holder could sue and recover for the amount of a dishonored instrument. *See Miller v. Race*, (1758) 97 Eng. Rep. 398 (K.B.) 401–02; 1 Burr. 452, 458 (establishing holder in due course rule, which allows a holder who obtains the negotiable instrument for value, in good faith, and without notice of any claims or defenses, the entitlement to enforce the promise to pay).[24] These deep roots in the common law are reflected in article 3's provision of many common law contract defenses in the event of suit. *See, e.g.*, TEX. BUS. & COM.CODE § 3.303(b) (allow-ing drawer a defense if the instrument is issued without consideration); *id.* § 3.305(a) (providing that the obligor of a negotiable instrument has many defenses available for simple contracts).[25] Indeed, the UCC explicitly provides that it is to be supplemented by principles of law, including the law merchant and the law relative to capacity to contract, unless displaced by the UCC's specific provisions. *See id.* § 1.103(b). Thus, section 3.414 does not convert what is a common law contractual obligation into a purely statutory one. As a tool of commerce, a check would be meaningless if, in the absence of a statute, a drawer was burdened with no contractual obligation to pay the amount of a dishonored check to the holder of the instrument.

Further, under the economic loss rule, we have held that a claim sounds in contract when the only injury is economic loss to the subject of the contract itself. *See Med. City Dallas, Ltd. v. Carlisle Corp.*, 251 S.W.3d 55, 61 (Tex.2008) (" 'When the injury is only the economic loss to the subject of a contract itself, the action sounds in contract.' ") (quoting *Am. Nat'l Petroleum Co. v. Transcon. Gas Pipe Line Corp.*, 798 S.W.2d 274, 282 (Tex.1990)). Here, Half–Price's damages are solely based on its economic loss due to UAIC's failure to pay the amount of the dishonored check—the fact that Half–Price sued pursuant to a statutory provision does not negate the reality that its damages sound in contract.[26]

---

24. *See also, e.g., Goodman v. Simonds*, 61 U.S. 343, 365, 20 How. 343, 15 L.Ed. 934 (1857) (observing that bona fide holder of negotiable instrument may recover on that instrument); *Weathered v. Smith*, 9 Tex. 622, 625–26 (1853) (same).

25. Of course, many of these contract defenses are abrogated under article 3 if the holder of the instrument is a holder in due course. *See, e.g.*, TEX. BUS. & COM.CODE §§ 3.302, .305(b).

26. We note that *Time Out Grocery* has been criticized for many of the reasons discussed above. *See* 13 BRADFORD STONE ET AL., WEST'S LEGAL FORMS: COMMERCIAL TRANSACTIONS § 3.4 (3d ed. 2007 & Supp.2010) ("The requirements for a negotiable instrument at §§ 3–103 and 3–104 make clear that an instrument

■ Because we conclude that a holder's suit against a drawer under section 3.414 is contractual, the remaining question is whether section 38.001(8) applies to such a suit. Section 38.001 applies to a claim for "an oral or written contract." TEX. CIV. PRAC. & REM.CODE § 38.001(8). As discussed above, a check is a formal contract. *See, e.g.,* RESTATEMENT (SECOND) OF CONTRACTS § 6. Importantly, section 38.001(8) does not distinguish between formal contracts and other types of contracts, nor between codified contract claims as compared to those that have not been codified. Section 38.001(8) does not narrow its scope to claims for breach of contract, nor differentiate between different types of contracts: it merely applies to claims on written or oral contracts. *See* TEX. CIV. PRAC. & REM.CODE § 38.001(8).[27] Chapter 38 provides an express exclusion for certain insurance contracts, but not for contracts involving financial instruments.

In *Medical City,* we held that attorney's fees were available under section 38.001(8) for an article 2 breach of express warranty claim, concluding that "a claim based on an express warranty is, in essence, a contract action" in that it "involves a party seeking damages based on an opponent's failure to uphold its end of the bargain." *See Med. City,* 251 S.W.3d at 58, 61. We further noted that a breach of express warranty claim, while distinct from a breach of contract claim, is a "creature of contract" and

is "contract-based." *Id.* at 60–61. The same is true here: though perhaps not a traditional breach of contract claim, Half–Price has brought a claim that is "contract-based." *See id.* at 61.

Finally, as we have noted, the Legislature instructs us to construe section 38.001 liberally, not strictly, to promote its underlying purposes. *See* TEX. CIV. PRAC. & REM. CODE § 38.005; *see also Med. City,* 251 S.W.3d at 59 (noting that courts are to construe section 38.001 liberally to promote its underlying purposes); *Preload Tech., Inc. v. A.B. & J. Constr. Co.,* 696 F.2d 1080, 1094–95 (5th Cir.1983) (applying section 38.001(8) to promissory estoppel claim given liberal construction afforded under that section). Applying section 38.001 here would do just that—it would allow a plaintiff with a small but valid contract claim to recoup its full amount of damages, a principle in line with the UCC's direction to "liberally" administer the remedies in the Code so that "the aggrieved party may be put in as good a position as if the other party had fully performed." TEX. BUS. & COM.CODE § 1.305(a). Here, Half–Price conclusively proved UAIC's contractual liability on the check as a matter of law, as well as its claim for attorney's fees. By its plain terms, we hold that section 38.001(8) applies to Half–Price's contract claim brought pursuant to section 3.414.

---

represents a contractual obligation to pay money. In addition, Article 1 § 1–103(b) makes clear that the UCC is built on the foundation of contract law and other common law principles. So it is puzzling to see a case like *Time Out Grocery* ... where the court held that the drawer's obligation to pay a check under § 3–414 was not a 'contract,' at least within the meaning of Tex. Civ. Prac. & Rem.Code § 38.001. This case can only be considered incorrect and aberrational. The Dallas court repeated the same error in *United Auto. Ins. Co. v. 1/2 Price Checks Cashed.*")

(internal citations omitted); John Krahmer, *Commercial Transactions,* 59 SMU L. REV 1013, 1030–31 (2006).

**27.** As a general matter, we further note that section 38.001 lists general types of claims, as opposed to specific causes of action. *See* TEX. CIV. PRAC. & REM.CODE § 38.001 (allowing recovery of attorney's fees on claims for "rendered services," "performed labor," "furnished material," "killed or injured stock," and so forth).

## B. Does Applying Section 38.001(8) to a Section 3.414 Claim Disrupt Article 3's Statutory Scheme?

■ UAIC argues that even if the plain language of section 38.001(8) applies to a holder's claim under section 3.414, we should decline to apply it here in order to avoid disrupting article 3's statutory scheme. UAIC correctly contends that the resolution of this issue is governed by the intersection of our opinions in *Southwest Bank, JCW Electronics*, and *Medical City*, cases which concerned the propriety of importing external statutory provisions into the UCC.

In *Southwest Bank*, we held that Texas Civil Practice and Remedies Code Chapter 33's proportionate responsibility statute did not apply to an article 3 conversion claim. *Sw. Bank v. Info. Support Concepts, Inc.*, 149 S.W.3d 104, 111 (Tex.2004). In reaching this holding, we observed that article 3 establishes a "comprehensive and carefully considered allocation of responsibility among parties to banking relationships," and contains its own comparative negligence provisions. *Id.* at 107. To import Chapter 33 into article 3, we reasoned, would upset that article's comprehensive liability scheme and "[do] violence" to the UCC. *Id.* at 110.

Conversely, in *JCW Electronics*, we *did* apply Chapter 33 to an article 2 breach of implied warranty tort claim. *JCW Elecs., Inc. v. Garza*, 257 S.W.3d 701, 707 (Tex. 2008). We distinguished *Southwest Bank* by stating: "Unlike UCC article 3, article 2 does not undertake a comprehensive fault scheme." *Id.* at 706. We therefore concluded that because article 2 does not contain a fault allocation scheme relevant to breach of implied warranty claims, Chapter 33 could apply without disrupting the UCC. *See id.* at 706–07.

Finally, as discussed above, we held in *Medical City* that section 38.001(8) attor-

ney's fees were available to a plaintiff who prevailed on an article 2 breach of express warranty claim. *Med. City*, 251 S.W.3d at 61, 63.

■ In aggregate, these cases establish the rule that it is legitimate to apply a non-UCC statutory provision to a claim brought under the UCC, so long as doing so does not "ignore the UCC itself and thwart its underlying purpose." *JCW Elecs.*, 257 S.W.3d at 709 (Jefferson, C.J., concurring) (quoting *Sw. Bank*, 149 S.W.3d at 111). UAIC contends applying section 38.001(8) here would violate this rule—that it would disrupt article 3's "comprehensive and carefully considered allocation of responsibility among parties to banking relationships," in the same manner applying Chapter 33 to an article 3 conversion claim would have done in *Southwest Bank*. *See Sw. Bank*, 149 S.W.3d at 107. We disagree.

Compelling reasons existed for the disparate results in *Southwest Bank* and *JCW Electronics*, both of which involved tort actions, that are inapplicable to *Medical City* and this case. First, *Southwest Bank* and *JCW Electronics* concerned whether importing external proportionate liability statutory provisions would disrupt the UCC's comprehensive *fault and liability* scheme. *Medical City* and the instant case, on the other hand, bear on the particular *remedy* of attorney's fees. Attorney's fees do not dictate fault or liability—they are awarded as a remedy *after* a party has been determined liable on a contract claim. Both article 2 and article 3 create detailed and comprehensive frameworks for contract remedies. *Compare* TEX. BUS. & COM. CODE §§ 2.701–.725 (providing remedies for both sellers and buyers, including consequential damages, nonmonetary remedies, specific performance, and so forth), *with id.* §§ 3.401–.420. Nonetheless, in

*Medical City*, we applied section 38.001(8) to an article 2 contract claim so that the claimant could recover attorney's fees in addition to the appropriate measure of damages for breach of express warranty. *Med. City*, 251 S.W.3d at 63. The same result is warranted here. Attorney's fees under section 38.001(8) are, in essence, an *additional* remedy so that a prevailing plaintiff may recoup the cost of trying a case and do not generally interrupt the measure of damages for a particular claim; thus, to permit the recovery of attorney's fees here, as in *Medical City*, does not disrupt the relevant remedies provisions of the UCC.

Second, the causes of action in *Medical City* and the instant case both touch on provisions of the UCC that are silent as to attorney's fees, a similarity that was not present in *Southwest Bank* and *JCW Electronics*. In *Southwest Bank*, applying Chapter 33 would have disrupted article 3's liability scheme because that article specifically set forth its own unique comparative negligence structure. *JCW Electronics*, on the other hand, implicated an article of the UCC that was silent as to comparative negligence. This distinction implicitly led to the disparate results in those cases, and is a difference starkly absent when comparing this case to *Medical City*. Here, as was true in *Medical City*, the relevant statutory provision is silent on the issue of attorney's fees, and so to import section 38.001(8) would not disrupt any element of that provision. Thus, to be clear, we do not today state that section 38.001(8) may always apply to a UCC contract claim. If, for example, a

provision allowed for the recovery of attorney's fees, but in a manner more restrictive than section 38.001(8), a plaintiff could not circumvent that limitation by recovering attorney's fees under section 38.001(8). The question to be answered in each instance is whether allowing a plaintiff to recover attorney's fees under section 38.001(8) would "[do] violence" to a particular UCC article's statutory scheme. *See Sw. Bank*, 149 S.W.3d at 110.

Article 3's concern with banking relationships does not dictate a different result. We have previously allowed for section 38.001(8) attorney's fees in an article 5 letter of credit case, even though a letter of credit is a financial instrument issued by a bank, with no apparent disturbance to banking relationships. *See Temple–Eastex Inc. v. Addison Bank*, 672 S.W.2d 793, 798 (Tex.1984). Further, the UCC allows for damages not only specifically provided by the Code, but also by "other rule of law." *See* TEX. BUS. & COM.CODE § 1.305(a). This provision extends to all portions of the UCC, including those articles concerning banking relationships.

■ UAIC next directs us to statutes from other states where attorney's fees are specifically provided for in suits involving dishonored checks.[28] UAIC contends that these statutes, each representing complex policy judgments, signify that the Texas Legislature deliberately intended as a policy matter *not* to allow for the recovery of attorney's fees for dishonored checks in this state. But these legislative enactments are not instructive here. As we have concluded, under the laws of this

---

**28.** Most states have not enacted legislation specifically allowing for attorney's fees in suits on a dishonored check. Those that have tend to do so in cases of "bad checks" and employ differing circumstances and remedies for recovery. *See, e.g.,* FLA. STAT. ANN. § 68.065 (West 2005) (allowing for attorney's fees when check dishonored for insufficient funds or due to stop payment on the check); N.J. STAT. ANN. § 2A:32A–1 (West 2010) (recovery of attorney's fees limited to check that is dishonored due to insufficient funds or because maker does not have account with drawee).

state and our precedent, section 3 8.001(8) applies to Half–Price's claim by its plain terms, and to do so would not disrupt article 3. *See* TEX. CIV. PRAC. & REM.CODE §§ 38.001(8), .005; *Med. City*, 251 S.W.3d at 63. And, in any event, decisions from other jurisdictions support our—and not UAIC's—conclusion. Other courts, including the Fifth Circuit, have allowed general attorney's fees provisions outside of the UCC to apply to a contract action under the UCC, including a contract action under article 3.[29] The UCC should be construed to promote uniformity with other jurisdictions. *See In re King–Porter Co.*, 446 F.2d 722, 732 (5th Cir.1971); *see also* TEX. GOV'T CODE § 311.028 ("A uniform act included in a code shall be construed to effect its general purpose to make uniform the law of those states that enact it."). Our interpretation furthers this goal.

UAIC finally argues that the existence of other provisions in the UCC that expressly provide for attorney's fees in suits concerning financial instruments—specifically section 5.111(e) for letters of credit—

suggests that the Legislature did not intend to allow for attorney's fees in section 3.414.[30] We are not persuaded. As discussed above, we have previously allowed a plaintiff to recover attorney's fees under section 38.001(8) in a UCC contract action, both in *Medical City* (article 2) and *Temple–Eastex* (article 5). Moreover, section 5.111(e)'s allowance for attorney's fees says little about the Legislature's reason for not specifically providing for attorney's fees in section 3.414. Section 5.111, unlike section 38.001, allows a *prevailing party* to recover attorney's fees, not merely a *prevailing claimant* as in section 38.001. *Compare* TEX. BUS. & COM.CODE § 5.111(e), *with* TEX. CIV. PRAC. & REM.CODE § 38.001. Because section 5.111(e) establishes a different rule from section 38.001, it is just as likely that the Legislature enacted section 5.111(e) to displace section 38.001's one-way fee shift where letters of credit are concerned, but remained satisfied as to section 38.001's application to a claim arising under section 3.414.[31]

---

**29.** *See Voest–Alpine Trading USA Corp. v. Bank of China*, 288 F.3d 262, 267–68 (5th Cir.2002) (applying section 38.001 to a letter of credit claim); *Tex. Nat'l Bank v. Sandia Mortg. Corp.*, 872 F.2d 692, 698–99 (5th Cir. 1989) (applying section 38.001(8) to contract action arising out of article 9 of the UCC); *First Nat'l Bank of Ariz. v. Cont'l Bank*, 138 Ariz. 194, 673 P.2d 938, 943–44 (Ariz.Ct.App. 1983) (awarding attorney's fees under Arizona statute authorizing the recovery of attorney's fees to the prevailing party in any contested action arising out of a contract to plaintiff's article 3 claim); *Sawgrass Builders, Inc. v. Realty Coop., Inc.*, 172 Ga.App. 324, 323 S.E.2d 243, 245 (1984) (applying general statutory provision allowing plaintiff to recover expenses of litigation in contract actions to article 3 claim); *Seattle–First Nat'l Bank v. Kim*, 38 Wash.App. 101, 684 P.2d 773, 775 (1984) (in holder's article 3 suit against endorser for a dishonored check, holding that attorney's fees were recoverable under general statute authorizing the recovery of attorney's fees in civil actions for claims of

$10,000 or less). *But see E. Girard Sav. Ass'n v. Citizens Nat'l Bank & Trust Co. of Baytown*, 593 F.2d 598, 604 (5th Cir.1979) (declining to award attorney's fees in letter of credit case without discussion of applicability of section 38.001(8), a result the Fifth Circuit later refused to follow in *Voest–Alpine*, 288 F.3d at 267–68).

**30.** Under section 5.111(e), a prevailing party in a suit on wrongful dishonor of a letter of credit may recover attorney's fees. TEX. BUS. & COM.CODE § 5.111(e).

**31.** On a similar note, UAIC contends that to apply section 38.001(8) to a section 3.414 contract action would work an illogical result since such a plaintiff would be in a better position suing under section 3.414, which does not expressly provide for attorney's fees, than a plaintiff suing under section 5.111(e), which does provide for attorney's fees. Section 5.111(e) adopts the English Rule for attorney's fees. Thus, a plaintiff suing for a letter of credit runs the risk of exposure to

In sum, we conclude that allowing a holder who has prevailed on a section 3.414 contract claim to recover attorney's fees under section 38.001(8) does not disrupt article 3.

## III. Conclusion

We hold that Half–Price's section 3.414 claim is a suit on a contract to which section 38.001(8) applies, and applying section 38.001(8) to the claim does not disrupt article 3's statutory scheme. We therefore reverse the court of appeals' judgment and remand the case to the trial court for a determination of attorney's fees.

attorney's fees if the plaintiff does not prevail. It appears that the article 5 drafting committee adopted this mandatory fee-shift as a trade-off for not imposing consequential damages on banks in letters of credit cases. *See* Sandra Stern, *Varying Article 5 of the UCC by Agreement*, 114 BANKING L.J. 516, 529–30 (1997). In Texas, this result is tempered by discretionary, rather than mandatory, attorney's fees. *See* TEX. BUS. & COM.CODE § 5.111(e). Given this background, we do not agree that applying section 38.001(8) to Half–Price's claim would work an illogical result: articles 5 and 3 are distinct articles of the UCC, involving entirely different types of financial instruments and entirely different discussions and negotiations in the drafting process.