**Affirmed and Memorandum Opinion filed June 5, 2014.**



**In The**

# Fourteenth Court of Appeals

### NO. 14-13-00122-CV

## CITY DIRECT MOTOR CARS, INC. AND MAHDI MOHAMMADAGHAEI, Appellants

### V.

## EXPO MOTORCARS, L.L.C., Appellee

**On Appeal from the 157th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2009-78921**

## M E M O R A N D U M   O P I N I O N

City Direct Motor Car, Inc. and its president, Mahdi Mohammadaghaei (collectively, "City Direct"), appeal the trial court's judgment in favor of Expo Motorcars, L.L.C. on Expo Motorcars's claims for breach of implied warranty of title, negligent misrepresentation, and fraud. We affirm the trial court's judgment.

### BACKGROUND

Expo Motorcars agreed to purchase a 2008 Mercedes S550 from City Direct

in November 2009. City Direct acquired the Mercedes from Exotic Auto Specialists, Inc. on November 28, 2009. Although Expo Motorcars already had agreed to purchase the vehicle, City Direct mistakenly posted the Mercedes online for sale. A representative of Wells Fargo Auto Finance, Inc., who was attempting to track down the vehicle in connection with a prior disputed lease financed by Wells Fargo, saw the online posting.

Wells Fargo contacted City Direct and spoke with Mahdi twice on December 8, 2009. Wells Fargo inquired about the Mercedes during the conversations, and Mahdi informed Wells Fargo that the vehicle had been sold. Mahdi also faxed to Wells Fargo a copy of the title City Direct held to the Mercedes. Mahdi told Expo Motorcars later that day that the Mercedes was ready for delivery; he did not disclose that Wells Fargo inquired about the Mercedes.

Expo Motorcars purchased the Mercedes for $57,000 from City Direct on December 9, 2009. Expo Motorcars sold the Mercedes to Shoukat Maredia on the same day for $61,059.33 plus $3,096.62 in taxes and fees; the transaction was financed by JP Morgan Chase Bank, N.A.

Wells Fargo sued City Direct on December 11, 2009, for conversion and wrongful possession. City Direct did not disclose the suit to Expo Motorcars. Wells Fargo wrote a letter to Expo Motorcars on January 12, 2010, demanding return of the Mercedes.

Wells Fargo sued Expo Motorcars, Maredia, and Chase Bank on March 1, 2010, for conversion and wrongful possession of the Mercedes. Expo Motorcars reacquired the Mercedes from Maredia and refunded the $64,156.25 paid by Maredia. Maredia and Chase subsequently were nonsuited by Wells Fargo. While the title dispute was pending, Expo Motorcars retained the Mercedes for 16 months. The trial court signed an order granting summary judgment in favor of

City Direct on the title claim on September 14, 2011; the summary judgment order stated that City Direct "had good title to the 2008 Mercedes S550" and denied all claims asserted by Wells Fargo. Expo Motorcars sold the Mercedes wholesale for $43,000 in February 2012.

Expo Motorcars filed a cross action and a third party petition against City Direct and Mahdi on April 2, 2012, alleging breach of implied warranty of title, negligent misrepresentation, and fraud. Expo Motorcars's claims for breach of implied warranty and fraud were tried to a jury.

The jury found that City Direct and Mahdi committed fraud, and that City Direct breached the implied warranty of title. The jury awarded damages totaling $37,000. This amount included $18,000 as the difference between "the retail value of the vehicle without the Wells Fargo claim and the value of the vehicle with the Wells Fargo claim;" it also included $4,000 as "[r]easonable and necessary expenses incurred in reacquiring the vehicle from Expo's customer." The jury awarded $15,000 in attorneys' fees.

City Direct filed a motion for new trial. Expo Motorcars filed a motion for reconsideration and remittitur; it claimed that the actual total amount of damages was $21,156.25. The trial court signed a final judgment on May 21, 2012, awarding Expo Motorcars $21,156.25 in damages and $15,000 in attorneys' fees, for a total judgment of $36,156.25. City Direct filed a second motion for new trial, which was denied on January 11, 2013. This appeal followed.

## ANALYSIS

City Direct challenges the trial court's judgment in ten issues on appeal: City Direct argues that (1) the evidence is legally and factually insufficient to support a finding of breach of implied warranty of title; (2) the evidence is legally

insufficient to support a finding of fraud; (3) the evidence is factually insufficient to support a finding of fraud; (4) the evidence is legally insufficient to support a finding that Mahdi was personally liable for fraud; (5) Questions Nos. 2 and 4 submitted an improper measure of damages; (6) the evidence is legally insufficient to support an award of damages as presented in Questions Nos. 2 and 4; (7) the evidence is factually insufficient to support an award of damages as presented in Questions Nos. 2 and 4; (8) attorneys' fees are not recoverable on the breach of implied warranty claim; (9) the evidence is legally insufficient to support an award of attorneys' fees for breach of implied warranty of title; and (10) the final judgment wrongfully bestowed a double recovery on Expo Motorcars.

## I.    Legal and Factual Sufficiency Standard of Review

When reviewing the legal sufficiency of the evidence, we review the evidence in the light most favorable to the verdict and assume that the court resolved all conflicts in accordance with its judgment. *City of Keller v. Wilson*, 168 S.W.3d 802, 820 (Tex. 2005). We credit evidence favorable to the verdict if reasonable factfinders could do so, and we disregard contrary evidence unless reasonable factfinders could not do so. *See id.* at 827. Evidence is legally insufficient if: (1) there is a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of the vital fact. *Id.* at 810. The ultimate test is whether the evidence at trial would enable reasonable and fair-minded people to reach the finding under review. *Id.* at 827.

For factual sufficiency review, appellate courts "must consider and weigh all the evidence, and should set aside the verdict only if it is so contrary to the

4

overwhelming weight of the evidence as to be clearly wrong and unjust." *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). Under both standards of review, the factfinder is the sole judge of the witnesses' testimony as well as the weight to be given to their testimony. *See City of Keller*, 168 S.W.3d at 819; *GTE Mobilnet of S. Tex. v. Pascouet*, 61 S.W.3d 599, 615–16 (Tex. App.—Houston [14th Dist.] 2001, pet. denied).

## II.    Breach of Implied Warranty

City Direct argues in its first issue that the trial court erred in submitting Question No. 3 asking whether City Direct breached an implied warranty of title because the evidence is legally and factually insufficient to support the jury's "yes" answer to Question No. 3. City Direct asserts that because the title conveyed for the Mercedes ultimately was determined via summary judgment to be good, there is no evidence to support a breach of implied warranty of title claim.

Question No. 3 asked:

Did City Direct fail to comply with the warranty of title with Expo?
There is in a contract for sale a warranty by the seller that:
1.    The title conveyed shall be good, and its transfer rightful; and
2.    The goods shall be delivered free from any security interest or other lien or encumbrance of which the buyer at the time of contracting has no knowledge.

City Direct correctly asserts that title conveyed for the Mercedes ultimately was adjudged to be good. The jury charge nevertheless required the transfer to be "rightful" and the car to be "delivered free from any . . . encumbrance of which the buyer at the time of contracting has no knowledge." The jury charge did not define encumbrance. Webster's International Dictionary defines "encumbrance" as "a burden that impedes action or renders it difficult" or "a burden or charge upon

5

property." *See* Webster's Third New International Dictionary 747 (1993).

Mahdi testified that Wells Fargo called City Direct twice on December 8, 2010, inquiring about the Mercedes. In response to the phone calls from Wells Fargo, Mahdi sent to Wells Fargo a copy of the title City Direct held to the Mercedes. The same day, Mahdi contacted Expo Motorcars stating that the Mercedes was ready for delivery. Wells Fargo sued City Direct on December 11, 2009, for conversion and wrongful possession. Mahdi never disclosed to Expo Motorcars that title to the Mercedes was in dispute. Expo Motorcars subsequently was sued by Wells Fargo.

An employee of Expo Motorcars, Zach Yazici, testified that Expo Motorcars was unable to sell the Mercedes without exposing potential clients to the risk of being sued by Wells Fargo. Thus, the title dispute impeded the subsequent sale of the Mercedes. Because of this impediment, there was more than a scintilla of evidence that City Direct breached the implied warranty of title as that claim was submitted in the jury charge. *See City of Keller*, 168 S.W.3d at 810. Further, the jury's finding that City Direct breached the implied warranty of title is not contrary to the overwhelming weight of the evidence as to be clearly wrong or manifestly unjust. *See Cain*, 709 S.W.2d at 176. Accordingly, we overrule City Direct's first issue.

## III. Fraud

City Direct argues in the second and third issues that the evidence is legally and factually insufficient to support the jury's "yes" answer to Question No. 1 because City Direct held good title; therefore, City Direct contends it could not be liable for fraud. City Direct asserts there was no evidence that City Direct or Mahdi intended to induce Expo Motorcars to take action by failing to disclose Wells Fargo's assertion of title.

6

The jury was asked in Question No. 1 as follows:

> Did either of those named below commit fraud against Expo Motorcars?
>
> Fraud occurs when:
>
> a.    A party conceals or fails to disclose a material fact within the knowledge of that party, and
>
> b.    The party knows that the other was ignorant of the fact and does not have an equal opportunity to discover the truth, and
>
> c.    The party intends to induce the other party to take some action by failing to disclose the fact, and
>
> d.    The other party suffers injury as a result of acting without knowledge of the undisclosed fact.

Answer "Yes" or "No" for each of the following.

> a.    City Direct        Yes
>
> b.    [Mahdi]          Yes

Mahdi testified that Wells Fargo called City Direct twice on December 8, 2009, inquiring about the Mercedes. City Direct did not disclose these conversations to Expo Motorcars. Wells Fargo sued City Direct on December 11, 2009, for conversion and wrongful possession. At trial, Mahdi testified that he would want to know whether the dealership from which he was buying a car had been contacted by a bank asserting ownership of the car. Yazici testified that if he had known that Wells Fargo asserted an interest in the car, Expo Motorcars would not have purchased it.

From these facts, the jury reasonably could have concluded that (1) City Direct knew Wells Fargo asserted that it had title to the vehicle and failed to disclose this material fact to Expo Motorcars; (2) City Direct knew that Expo Motorcars was unaware of the title dispute when Expo Motorcars purchased the vehicle; (3) Expo Motorcars would not have paid the purchase price of $57,000 if

7

it had known of the title dispute; and (4) City Direct did not disclose the title dispute because it wanted Expo Motorcars to purchase the vehicle. Thus, the evidence is legally sufficient to support the jury's finding that City Direct committed fraud. *See City of Keller*, 168 S.W.3d at 810. Further, the jury's finding that City Direct committed fraud is not contrary to the overwhelming weight of the evidence as to be clearly wrong or manifestly unjust. *See Cain*, 709 S.W.2d at 176. Accordingly, we overrule City Direct's second and third issues.

## IV. Mahdi's Liability

In the fourth issue, City Direct argues that the evidence is legally insufficient to support the jury's "yes" answer as to Mahdi in Question No. 1. City Direct argues:

> Mahdi was the president of City Direct. All communications and actions were made in his capacity as president of City Direct. There was no evidence that he acted in his [i]ndividual capacity. Again, any statements or representations made to [Expo Motorcars] were made in his capacity as [p]resident of City Direct and not individually.

As submitted, Question No. 1 contains an answer blank for Mahdi; Question No. 1 does not include an instruction that the jury was required to find that Mahdi acted in an individual capacity apart from his role as president of City Direct. City Direct did not object to this omission. At the charge conference, City Direct objected to Question No. 1 on grounds that there was no evidence that City Direct and Mahdi intended to mislead Expo Motorcars.

We review sufficiency of the evidence under the jury charge as given without objection. *See Romero v. KPH Consol., Inc.*, 166 S.W.3d 212, 227 (Tex. 2005); *Haut v. Green Cafe Mgmt., Inc.*, 376 S.W.3d 171, 187 (Tex. App.— Houston [14th Dist.] 2012, no pet.). The evidence discussed in Section III supports the jury's "yes" answer as to Mahdi in the jury charge as it was submitted.

8

Even if the charge had included a limiting instruction regarding Mahdi's personal liability, the result would be the same because there is ample evidence that Mahdi knowingly participated in a fraud perpetuated by City Direct. A corporate agent "who knowingly participates in tortious or fraudulent acts may be held individually liable to third persons even though he performed the act as an agent of the corporation." *Nwokedi v. Unlimited Restoration Specialists, Inc.*, 01-12-00011-CV, 2014 WL 258993, at *6 (Tex. App.—Houston [1st Dist.] Jan. 23, 2014, pet. denied) (citing *Glattly v. CMS Viron Corp.*, 177 S.W.3d 438, 448 (Tex. App.—Houston [1st Dist.] 2005, no pet.)).

Wells Fargo personally called Mahdi twice inquiring about the Mercedes. Mahdi also faxed to Wells Fargo a copy of the title City Direct held to the Mercedes. Mahdi personally called Expo Motorcars to confirm that the vehicle was ready for delivery; he failed to tell Expo Motorcars about the title dispute. This evidence is sufficient to prove that Mahdi knowingly participated in a fraud perpetuated by City Direct by failing to disclose a material fact within his knowledge. *See Nwokedi*, 2014 WL 258993, at *6 (evidence establishing that owner knowingly participated in fraud was sufficient to hold him individually liable for fraud). We overrule City Direct's fourth issue.

## V. Improper Measure of Damages

City Direct argues in the fifth issue that the trial court erred in submitting Questions Nos. 2 and 4 to the jury because each question presents an improper measure of damages.

To preserve charge error for review, a party must "point out distinctly the objectionable matter and the grounds of the objection." Tex. R. Civ. P. 274; *Hamid v. Lexus*, 369 S.W.3d 291, 296 (Tex. App.—Houston [1st Dist.] 2011, no pet.). "Any complaint as to a question, definition, or instruction, on account of any

9

defect, omission, or fault in pleading, is waived unless specifically included in the objections." Tex. R. Civ. P. 274. "The cardinal rule for preserving error is that an objection must be clear enough to give the trial court an opportunity to correct it." *Arkoma Basin Exploration Co. v. FMF Assocs. 1990-A, Ltd.*, 249 S.W.3d 380, 387 (Tex. 2008). On appeal, the charge error complained of must comport with the objections made at the charge conference. *See In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003); *Cont'l Cas. Co. v. Baker*, 355 S.W.3d 375, 383 (Tex. App.—Houston [1st Dist.] 2011, no. pet.). Accordingly, an objection made during trial which differs from the argument urged on appeal presents nothing for appellate review. *Lawrence Marshall Dealerships v. Meltzer*, No. 14-10-00189-CV, 2011 WL 2650940, at *2 (Tex. App.—Houston [14th Dist.] July 7, 2011, no pet.) (mem. op.).

At the charge conference, City Direct objected to Questions Nos. 2 and 4 on the basis that there was no evidence to support damages. City Direct did not object on the grounds that Questions 2 and 4 submitted the wrong measure of damages. Thus, this argument is not preserved for our review. *See In re A.V.*, 113 S.W.3d at 362. Accordingly, we overrule City Direct's fifth issue.

## VI. Damages

In the sixth and seventh issues, City Direct argues that the trial court erred in signing a final judgment in favor of Expo Motorcars because the evidence is legally and factually insufficient to support the damages as presented in Question Nos. 2 and 4. City Direct asserts that no one testified to "the difference in value of the vehicle without the Wells Fargo claim and with the Wells Fargo claim." City Direct also asserts that the final judgment bestowed a double recovery on Expo Motorcars. We disagree with both assertions.

Question No. 2 asked: "What sum of money, if any, if paid now in cash,

would fairly and reasonably compensate Expo for its damages, if any, that resulted from such fraud?" Question No. 4 asked: "What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Expo for its damages, if any, that resulted from such breach of warranty of title?" Questions Nos. 2 and 4 both stated:

> Consider the following elements of damages, if any, and none other. Answer in dollars and cents, if any.
>
> a.      The difference, if any, between the value of the vehicle without the Wells Fargo claim and the value of the vehicle with the Wells Fargo claim.
>
> b.      Reasonable and necessary expenses incurred in reacquiring the vehicle from Expo's customer.

For both questions, the jury found $18,000 as the difference in value and $4,000 as reasonable and necessary expenses. The trial court signed a judgment awarding $21,156.25 after Expo Motorcars filed a motion for reconsideration and remittitur requesting this amount. City Direct contends that there is no evidence to support the amount awarded as reasonable and necessary fees, and that the award is included in the $18,000 awarded as the difference in value.

Yazici testified that Expo Motorcars purchased the Mercedes from City Direct for $57,000 on December 9, 2009. Yazici also testified that Expo Motorcars sold the Mercedes to Maredia on the same day before it had knowledge of Wells Fargo's claim. Plaintiff's Exhibit No. 8 shows that Maredia paid $61,059.33 for the car, and an additional $3,096.62 for fees and taxes, for a total of $64,156.25. Yazici testified that Expo Motorcars refunded to Maredia the entire amount. Wells Fargo sued Expo Motorcars, Maredia, and Chase Bank. After the title was cleared, Yazici testified that Expo Motorcars sold the vehicle for $43,000 in February 2012.

11

Thus, the evidence is sufficient to support the final judgment award of $21,156.25 in actual damages, which represents the sum of $18,059.33,[1] the value of the vehicle with the Wells Fargo claim, plus $3,096.92,[2] the actual expenses incurred in reacquiring the vehicle. *See City of Keller*, 168 S.W.3d at 819. We overrule City Direct's sixth and seventh issues.

## VII. Attorneys' Fees Allowed in Breach of Implied Warranty of Title

In its eighth issue, City Direct argues that the trial court erred in submitting Question No. 5 to the jury because there is no statutory authority or case law that provides authority for the recovery of attorneys' fees in this case.

In general, a prevailing party to a lawsuit is entitled to recover attorneys' fees only if authorized by statute or contract. *Tucker v. Thomas*, 419 S.W.3d 292, 295 (Tex. 2013). Texas Civil Practice and Remedies Code section 38.001 provides attorneys' fees for suits based on an oral or written contract. *See* Tex. Civ. Prac. & Rem. Code Ann. § 38.001(8).

The Texas Supreme Court has held that although an express warranty claim is distinct from a breach of contract claim, "an express warranty is the result of a negotiated exchange, and is a creature of contract;" therefore, attorneys' fees are recoverable for a suit based on a breach of an express warranty. *Med. City Dallas, Ltd. v. Carlisle Corp.*, 251 S.W.3d 55, 62 (Tex. 2008). In reaching its decision, the supreme court noted that "[u]nder the economic loss rule, the nature of the injury helps determine which duty or duties are breached and, ultimately, which damages are appropriate: 'When the injury is only the economic loss to the subject of a contract itself, the action sounds in contract.'" *Id.* (quoting *Am. Nat'l Petroleum Co. v. Transcon. Gas Pipe Line Corp.,* 798 S.W.2d 274, 282 (Tex. 1990) (internal

---

[1] $61,059.33 minus $43,000 equals $18, 059.33.

[2] $64,156.25 minus $61,059.33 equals $3,096.92.

citation omitted)).

Similarly, in *½ Price Checks Cashed v. United Automobile Insurance Co.*, 344 S.W.3d 378, 392 (Tex. 2011), the supreme court held that a holder suing the drawer of a dishonored check under the UCC may recover attorneys' fees under section 38.001(8) because it is a suit on a contract. The court noted that the plaintiff sought damages only for economic loss.

Applying *Medical City* and *½ Price Checks Cashed*, the First Court of Appeals concluded that section 38.001(8) applies to a claim for breach of the implied warranty of merchantability. *Howard Indus., Inc. v. Crown Cork & Seal Co.,* 403 S.W.3d 347, 352 (Tex. App.—Houston [1st Dist.] 2013, no pet.). The court reasoned, that because the plaintiff sought only economic damages resulting from a transformer malfunction, section 38.001(8) applied. *Id.*

Here, Expo Motorcars sought only economic damages resulting from the sale of the Mercedes. Given the nature of the injury alleged, we conclude that the claim sounded in contract for purposes of allowing an award of attorneys' fees under section 38.001(8).[3] *See Med. City,* 251 S.W.3d at 60-63; *see also ½ Price Checks*, 344 S.W.3d at 387-88; *see also Howard Indus., Inc.*, 403 S.W.3d at 352. Accordingly, we overrule City Direct's eighth issue.

---

[3] In *7979 Airport Garage, L.L.C. v. Dollar Rent A Car Sys. Inc.* , 245 S.W.3d 488, 509 n.31 (Tex. App.—Houston [14th Dist.] 2007, pet. denied), the plaintiff requested attorneys' fees based on its breach of contract claim and sought attorneys' fees for breach of implied warranty of suitability on the ground that the fees were intertwined with its breach of contract claim. This court stated in a footnote that it was not concluding that attorneys' fees incurred solely to prosecute a claim for breach of the implied warranty of suitability are independently recoverable under section 38.001(8). *Id.* at 509 n.31. Insofar as footnote 31 can be read to suggest that attorneys' fees are not recoverable for a breach of the implied warranty of suitability under section 38.001(8), we conclude that any such suggestion does not survive the supreme court's subsequent analysis in *Medical City* and *½ Price Checks Cashed*. *See Med. City*, 251 S.W.3d at 60-63; *½ Price Checks*, 344 S.W.3d at 387-88; *see also Howard Indus., Inc.*, 403 S.W.3d at 353. We follow the supreme court's analysis. *See Med. City*, 251 S.W.3d at 60-63; *see also ½ Price Checks*, 344 S.W.3d at 387-88.

## VIII. Legal Sufficiency of Attorneys' Fees Evidence

City Direct argues in the ninth issue that the trial court erred in submitting Question No. 5 to the jury because the evidence is legally insufficient to support an award of attorneys' fees for breach of implied warranty of title. City Direct argues that there was no evidence as to the reasonableness or usual and customary charges for like or similar services in Harris County, Texas.

Expo Motorcars's attorney testified as to both the amount and the type of work she performed in representing Expo Motorcars. She testified that (1) the work she performed was necessary to adequately represent Expo Motorcars's interests in this case; (2) she has represented a number of clients in similar claims; (3) she was familiar with attorneys' fees customarily charged for such claims; (4) her fees before the trial were $10,083; and (5) her fees during trial were $5,000. Thus, the jury's award of $15,000 in attorneys' fees was supported by more than a scintilla of evidence. *See City of Keller*, 168 S.W.3d at 810. We overrule City Direct's ninth issue.

## IX. One Satisfaction Rule

City Direct asserts in its final issue that the trial court erred in signing the final judgment because it allowed a double recovery. City Direct further asserts that Expo Motorcars should have been required to elect which remedy it preferred.

Under the one satisfaction rule, a claimant is entitled to only one recovery for any damages suffered. *Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 390 (Tex. 2000); *Nat'l City Bank of Ind. v. Ortiz*, 401 S.W.3d 867, 887 (Tex. App.— Houston [14th Dist.] 2013, pet. denied). The rule applies when different parties commit the same act or when different acts cause the same injury. *Casteel*, 22 S.W.3d at 390. When a party tries a case on alternative theories of recovery and

14

the jury returns favorable findings on two or more theories, the prevailing party has a right to a judgment on the theory that affords him the greatest or most favorable relief. *Boyce Iron Works, Inc. v. Sw. Bell Tel. Co.*, 747 S.W.2d 785, 787 (Tex. 1988).

Double recovery for a single injury is not permitted; if the prevailing party fails to make such an election, then the trial court should utilize the findings affording the prevailing party the greater recovery and render judgment accordingly. *Hatfield v. Solomon,* 316 S.W.3d 50, 59 (Tex. App.—Houston [14th Dist.] 2010, no pet.). However, if a party receives favorable findings on two or more theories of recovery that are consistent with each other and result in the same damages, then the trial court may render judgment awarding a single recovery of these damages, and this judgment may be based on all of these theories. *Id.*

Here, Expo Motorcars tried the case on alternative theories of fraud and breach of implied warranty of title. The jury returned favorable findings on both theories, and these theories were consistent with each other resulting in the same damages. The trial court did not err in signing a judgment awarding a single recovery based on both theories of recovery. *See id.* Accordingly, we overrule City Direct's final issue.

CONCLUSION

Having overruled all of City Direct's issues, we affirm the judgment of the trial court.


/s/     William J. Boyce
        Justice


Panel consists of Justices Boyce, Christopher, and Brown.